No. 21,328.

FRANK E. DEFENBAUGH, *Appellee,* v. THE UNION PACIFIC
RAILROAD COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Evidence.* There was evidence to support the plaintiff's allegation of negligence.

2. NEGLIGENCE—*Unprotected Railroad Repair Shops—Injury to Employee.* Under section 8545 of the General Statutes of 1915, a railroad is liable for the injuries sustained by a car repairer who is blown by the wind from the top of a car on which he is working, where the car is being repaired in regular shops, at a division point, on tracks exclusively used for repair work, and is not in or under any shed.

3. SAME—*Car Repairer—Not Engaged in Interstate Commerce.* A car repairer cannot be said to be engaged in interstate commerce while working on a car which has been used in such commerce and which, while being repaired, is empty and is not used in any kind of transportation, where it does not appear that the car is used exclusively in interstate commerce.

4. SAME—*Contributory Negligence—Assumption of Risk.* Under sections 8480, 8481, and 8482 of the General Statutes of 1915, neither contributory negligence nor assumption of risk is a defense in an action to recover damages for injuries sustained by a car repairer, under the circumstances described in the second paragraph of this syllabus.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed March 9, 1918. Affirmed.

*R. W. Blair, T. M. Lillard,* and *A. M. Hambleton,* all of Topeka, for the appellant.

*Arthur J. Stanley,* and *Guy E. Stanley,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The defendant appeals from a judgment rendered against it in favor of the plaintiff for injuries sustained by him.

The plaintiff, a car repairer, was injured by being blown from the top of a freight car on which he was working. At

the time of his injury the plaintiff was employed by the defendant in its regular repair shops in Kansas City, Kan., one of the defendant's division points. The car on which the plaintiff was working was standing on a track used exclusively for repair work, but was not covered nor enclosed by any shed. There were sheds connected with the repair shops, but the sheds were full, and there was no room in them for the car on which the plaintiff was working. The plaintiff was removing sheet metal from the roof of the car. After the metal had been loosened, a gust of wind caught it and blew it and the plaintiff to the ground. On the day the plaintiff was injured the wind was blowing from forty to forty-five miles an hour.

The petition alleged that the defendant was negligent in not having the car on which the plaintiff was working in a shed which could have been closed so as to prevent the wind from catching and blowing the metal roof off the car. Contributory negligence, assumption of risk, and that the plaintiff was engaged in interstate commerce at the time of his injury, were alleged as defenses.

1. The defendant's first contention is that there was no evidence to support the plaintiff's allegation of negligence. Section 8545 of the General Statutes of 1915 reads:

"It shall be unlawful for any railroad company or corporation or other persons who own, control or operate any line of railroad in the state of Kansas to build or repair railroad equipment at division points where shops are located without providing sheds, so constructed that they may be entirely enclosed, over the tracks exclusively used for such repair work, so that all men permanently employed for such repairs may be protected during storms or other inclement weather or from extreme heat: *Provided*, Nothing in this act shall relate to temporary repairs made at places other than regular shops."

The statute applied to the work that was being done by the plaintiff. The evidence supported the charge of negligence set out in the petition.

2. The defendant's second contention is that its negligence in failing to provide a shed for the repair track was not the proximate cause of the plaintiff's injury. The contention cannot be harmonized with the requirements of the statute. The wind was the direct cause of the injury to the plaintiff. If the statute had been complied with the accident would not have

'occurred. The purpose of the statute which has been quoted, is to protect employees from being injured by inclement weather of any kind—heat or cold, rain or snow, wind or storm. The statute was not complied with, and because it was not complied with the plaintiff was injured. Injury to an employee caused by inclement weather could have been foreseen by the defendant as a result of its failure to comply with the statute. The injury that did result was one of those that might have been thus foreseen. High winds occur frequently in this state, and metal roofs are often torn from buildings by such winds. A person working on a loosened metal roof of any structure during a high wind in this state is liable to be injured. The statute was intended to compel the defendant to guard against the thing that caused the plaintiff's injury. There was, therefore, causal connection between the violation of the statute and the injury to the plaintiff, and the defendant's contention cannot be sustained. Substantial support for the conclusion here reached is found in *Fowler v. Enzenperger,* 77 Kan. 406, 413, 99 Pac. 995; *Caspar v. Lewin,* 82 Kan. 604, 625, 109 Pac. 657; *Casteel v. Brick Co.,* 83 Kan. 533, 537, 112 Pac. 145.

3. The defendant's third contention is that the plaintiff was employed in interstate commerce at the time of his injury. The car on which the plaintiff was working was an empty Union Pacific car. The accident occurred on November 19, 1915. The car had been used in the regular commercial service of the defendant. On November 16, 1915, it was received from the Wabash railroad after it had completed an interstate trip. It was then inspected, found in bad order, and placed in the yards for repairs. While undergoing repairs it was entirely out of commercial service and was not used for any commercial purpose. On November 22, 1915, after it had been repaired, it was again put into commercial service. It does not appear whether the first service of the car, after being repaired, was in interstate commerce or in intrastate commerce, and it does not appear that the car was used exclusively for service in interstate commerce.

There has been some confusion in the decisions in both the state and federal courts concerning the interstate character of work similar to that performed by the plaintiff. An analogous

case was decided by the supreme court of the United States on January 8, 1917, *Minneapolis & St. Louis R. R. Co. v. Winters,* 242 U. S. 353, where that court said:

"The plaintiff was making repairs upon an engine. This engine 'had been used in the hauling of freight trains over defendant's line . . . which freight trains hauled both intrastate and interstate commerce, and . . . it was so used after the plaintiff's injury.' The last time before the injury on which the engine was used was on October 18, when it pulled a freight train into Marshalltown, and it was used again on October 21, after the accident, to pull a freight train out from the same place. That is all that we have, and is not sufficient to bring the case under the act. This is not like the matter of repairs upon a road permanently devoted to commerce among the states. An engine as such is not permanently devoted to any kind of traffic and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time, not upon remote probabilities or upon accidental later events." (p. 356.)

Following the reasoning of the United States supreme court, the conclusion is inevitable that the plaintiff was not engaged in interstate commerce at the time he was injured.

4. The defendant's last contention is that the plaintiff was guilty of contributory negligence, and had assumed the risk. This contention is not good. Section 8481 of the General Statutes of 1915 reads:

"That in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided,* That no employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier, its officers, agents, servants or other employees of any federal or state statute enacted for the safety of employees contributed to the injury or death of such employee."

Section 8482 of the General Statutes of 1915 reads:

"That any action brought against any common carrier, under or by virtue of any of the provisions of this act, to recover damages for injuries to, or the death of any of its employees, such employee[s] shall not be held

to have assumed the risk of his employment in any case where the violation by such common carrier, its officers, agents, servants, or other employees of any federal or state statute enacted for the safety of employees contributed to the injury or death of such employee."

These statutes apply against all corporations operating railroads, in all cases of—

"Injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier; or by reason of any insufficiency of clearance of obstructions, of strength of roadbed and tracks or structure, of machinery and equipment, of lights and signals, or rules and regulations and of number of employees to perform the particular duties with safety to themselves and their coemployees, or of any other insufficiency, or by reason of any defect, which defect is due to the negligence of said employer, its officers, agents, servants or other employees in its cars, engines, motors, appliances, machinery, track, roadbed, boats, works, wharves, or other equipment." (Gen. Stat. 1915, § 8480.)

The failure of the defendant to provide a shed over the track on which the car was standing while being repaired, or to place the car in a shed, contributed to the plaintiff's injury, and neither contributory negligence nor assumption of risk is a good defense.

The judgment is affirmed.