No. 28,959.

MIKE BEGLEY, *Appellee,* v. THE MISSOURI PACIFIC RAILROAD COMPANY, *Appellant.*

(280 Pac. 902.)

Opinion filed October 5, 1929.

*W. P. Waggener* and *B. P. Waggener*, both of Atchison, for the appellant.

*C. Clyde Myers* and *Stanton L. Smiley*, both of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Plaintiff brought this proceeding against his employer, the Missouri Pacific Railroad Company, for an injury sustained in the course of his employment while lifting a rail from the side of a switch track in the defendant's cypress yards in Kansas City. The rail had been removed from the switch track and thrown upon the side of the railway embankment, where it lay for several days. The accidental injury to plaintiff occurred by overexertion when he and some fellow workmen were lifting the discarded rail to place it on a push car so that it could be carried to a junk pile.

Plaintiff claimed compensation under the Kansas statute. The only defense of present concern was that at the time of the accident plaintiff and defendant were engaged in interstate commerce, that the track from which the rail was taken was used for interstate traffic, that the removal of the rail from the side of the switch track to the junk pile was an incident of that traffic, and consequently the rights of plaintiff and the liability of defendant, if any, should be governed by the federal employers' liability act and not by the workmen's compensation act.

An examiner, acting under our local statute, found the facts of the injury to be as alleged by plaintiff, and made an award in his behalf in the sum of $10.94 per week for temporary total disability, which award was to continue until the further order of the public service commission, but not in any event to exceed 415 weeks.

The railway company appealed to the district court, where the award was sustained. The accident itself and all the statutory and judicial proceedings which ensued therefrom transpired in the interim when this court was without appellate jurisdiction in workmen's compensation cases under the rule announced in *Norman v. Consolidated Cement Co.*, 127 Kan. 643, 274 Pac. 233. Defendant does not question the soundness of that decision, but contends as it has consistently done from the inception of this controversy that

the federal employers' liability act, and not the state statute governing workmen's compensation, controls. In other words, the defendant raises the point that neither the public service commission nor its examiner had jurisdiction of the subject matter, and that the award of the commission was a nullity which gained no virtue from its approval by the district court. This, of course, presents a judicial question of which this court must take cognizance. (Civ. Code, § 566; R. S. 60-3303.)

Counsel for the appellee resist the appeal on the ground that this court will not disturb a finding of fact based on competent evidence, and that the commissioner of compensation under the statute (Laws 1927, ch. 232, § 33 et seq.) made a finding which was sustained by the district court to the effect that in "piling rails on a push car to be taken to the junk pile the. claimant was not engaged in interstate commerce."

That finding, however, is not a finding of fact, but a conclusion deduced correctly or incorrectly from the facts which in themselves were not in dispute. The plaintiff's testimony was to this effect:

"That on or about May 7, 1928, I was instructed to help take a rail that was lying along the tracks in the cypress yards at Kansas City, Kan., to the scrap pile. . . . The rail was lying out on the edge of the bank extending in the same direction as the track extends. This switch track beside which the rail was lying is the track used for the indiscriminate switching of cars and storing of cars. The rail came out of one of the tracks, but I could not say which one now. We were taking up rails nearly every day, sometimes one, sometimes two, but it was a broke rail we had taken out of the track ourselves some place and didn't take it out of the yards right at that time, but throwed it out on the bank and left it there until we could come after it. This rail had come out of one of the tracks in the yards. Took it out, O, maybe two or three days before. . . . This rail was to go back by the tool house south of the scrap pile."

Defendant's foreman testified:

"These yards are used for transfer of cars from foreign roads to the Missouri Pacific and the other roads take their cars from these tracks. The Union Pacific and the Rock Island bring cars there and they are transferred. Some go to Union Pacific, some to Rock Island, different places. Union Pacific brings transfer loads from the east bottoms to the yards. The east-bottom yards are located in Kansas City, Mo., across the river in Missouri. Mike Begley was a member of my gang. He left the service of the company the afternoon of May 8. . . . It would be dangerous to leave the rails taken out of the tracks in the yards, because somebody might fall on them, and the purpose for taking them from the yard is to clear the yards and make it safe. All of these yards are used as transfer yards.

"It was lying on the edge of the bank; the bank was east of the rail; the track was used for indiscriminate switching and storing of cars. That it was a broken rail that had been taken out of the track by themselves some days before and thrown on the bank and left there to be taken away later; that a new rail had been changed for it; that sometimes a rail would lay there for a week or two. . . .

"Mr. Hunter testified: 'If they (the rails) are no good we take them to the scrap pile until they accumulate together a carload.'"

What is the proper conclusion to be drawn from the foregoing undisputed facts? Counsel for the litigants have had no trouble finding plenty of decisions, all more or less analogous to the case at bar, to support their respective contentions. These decisions cannot be harmonized. In general it might be said of them that in the older decisions the state courts did not readily yield to the view nor did the federal supreme court insist on the view that the indirect incidents pertaining to the operation of an interstate railroad were themselves a part of the interstate commerce of the country to the extent that the rights or parties thereunder should no longer be governed by local law. Twenty years ago, when the federal employers' liability law was enacted, April 22, 1908 (U. S. Comp. Stat., 1916, § 8657), it is quite unlikely that our national lawmakers realized they were legislating to the effect that in carrying a sack of bolts for the repair of a bridge in Hoboken a workman should be deemed to have been engaged in interstate commerce, yet a judicial holding to that effect followed when it was considered that the bridge was used for interstate traffic (as well as intrastate) and that its maintenance was requisite to that traffic, and of course the bolts which the workmen carried were necessary to keep it in repair. (*Pedersen v. Del Lack & West. R. R.*, 229 U. S. 146, 57 L. Ed. 1125.) In that case the court said:

"Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars, and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency . . . in its cars, engines, appliances, machinery, track,

roadbed, works, boats, wharves, or other equipment' used in interstate commerce. But independently of the statute we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it."

This test has been invoked with varying results in later cases decided by the federal supreme court. Thus it has been held that a flagman stationed at a public crossing to signal interstate and intrastate trains, without regard to the character—intrastate or interstate—of the particular train he was flagging when he was killed, was engaged in interstate commerce so as to exclude the operation of a state workmen's compensation law. (*Phila. & Read. Co. v. Di Donato*, 256 U. S. 327, 65 L. Ed. 955.)

In one of our own cases, *Coil v. Payne, Director General,* 114 Kan. 636, 220 Pac. 172, in deference to the rule announced in the Pedersen case, *supra,* it was held that the right of redress for a workman injured while working as a track laborer on a small intrastate railroad whose lines were confined to two or three counties in central Kansas was governed by the federal employers' liability act because a substantial part of the railroad's traffic was interstate in character.

On the other hand, it has been authoritatively held that a machinist's helper who was injured in a roundhouse while making repairs on a railway engine was not engaged in interstate commerce although it had been used in interstate commerce three days prior to the accident and was again put to work in that commerce immediately after the accident. (*Minneapolis & St. Louis R. R. Co. v. Winters,* 242 U. S. 353, 61 L. Ed. 358.) Our own court reached a similar conclusion in *Defenbaugh v. Railroad Co.,* 102 Kan. 569, 171 Pac. 647, where it was held that a workman who was blown from the top of a freight car while it was undergoing repairs at the regular shop of the railway company was not engaged in interstate commerce as the car itself was not then being used in any sort of commerce, state or interstate, although it had frequently been used in interstate commerce theretofore and doubtless would be put to such use after being repaired.

There is practically no limit to the number of cases involving the question whether injured railway employees were or were not engaged in interstate commerce when their injuries were received. Instructive reviews of many such cases will be found in *Bumstead v. Railway Co.,* 99 Kan. 589, 162 Pac. 347, and in the very recent case

of *Hensley v. Chicago, St. P., M. & O. Ry. Co.*, [Neb.] 226 N. W. 421.

In 2 Roberts Federal Liabilities of Carriers (2d ed., 1929), § 779, it is said:

"The status of the employees of the interstate carriers, in handling rails along tracks constituting interstate highways, depends upon the closeness of the relation of the work to interstate commerce; for, if the particular employment at the time of an injury is not such as to constitute, in a practicable sense, a part of interstate transportation, the federal act does not apply. The general rule is that an employee is engaged in interstate commerce if the labor of handling the rails is so closely connected with interstate commerce as to be, in legal contemplation, a part of it. Employees engaged in taking out old rails from a track over which interstate traffic is regularly conveyed, or in replacing them with new rails, are, beyond any question, within the federal statute. To this extent there is unanimity of opinion among the courts since the decision of the national court in the Pedersen case, *supra*.

"But the character of the employment of a laborer picking up old rails piled along the right of way or storing or piling new rails for future use, has not been specifically adjudicated by the national supreme court, and there is apparently a conflict of opinion in the decisions of other courts. Some courts, under the influence of the doctrines announced in the Shanks (239 U. S. 556, 60 L. Ed. 436), Yurkonis (238 U. S. 439, 59 L. Ed. 1397), Harrington (241 U. S. 177, 60 L. Ed. 941), Winters (242 U. S. 353, 61 L. Ed. 358) and other cases applied to different facts, have held that employees in so handling rails are not engaged in work which is a part of interstate commerce. For example, a trackman in the employ of a railroad company, at the time he was injured, was placing new rails into a pit between two tracks where the rails were to be stored until they were required for track repairing in the future. His employment, while so engaged, it was held, was no part of interstate commerce. Similarly, a section hand while loading, upon a flat car, unused rails which had theretofore been removed from the track, and had been left on the right of way, it was held in another case, was not employed in interstate commerce. But, on the other hand, in apparent conflict with at least the foregoing Kentucky cases cited, the federal circuit court of appeals for the third district held that an assistant foreman of a track gang while engaged in removing old rails from where they had been left between the tracks after being taken out a few days before, was engaged in interstate commerce. A similar conclusion was reached by the circuit court of appeals for the first circuit, but in that case there was this additional factor; the work train upon which the rails were being loaded was in transit, subject to the delays of the work, from a point in Maine to a point in Canada. An employee assisting in loading rails on a flat car was held not to be within the protection of the federal act, but nothing was shown whether the rails were old or new, where they came from, where they were taken, or where the car was to be when loaded. . . . A section gang composed of about thirty men was employed in taking up old rails and replacing them with new ones on a railroad running from a point in Utah to

Omaha, Neb. The old rails were first placed along the side of the track and then removed on push cars to scrap piles about thirty yards from where they were picked up. A member of the gang who was employed, exclusively, in moving the old rails from where they were thrown along the side of the track to the scrap pile, was held not to be engaged in interstate commerce. (*Perez v. Union P. R. Co.*, 52 Utah 286.) The decision of the court in this case does not seem to be sound, for Perez's work was but a part of the larger task of repairing an interstate line and the removal of the old rails, as the work proceeded, to the scrap pile was but an incident thereof."

Before concluding our examination of analogous cases, which has included all those which the diligence of counsel has called to our attention and a good many others as well, counsel for appellant urge that we examine particularly the closely analogous case of *Kusturin v. C. & A. R. R. Co.*, 287 Ill. 306, where it was held that a workman who was injured in loading old rails on a flat car which had been taken out of an interstate railway track and left for two weeks by the side of the track was engaged in interstate commerce and his right of redress against his employer was governed and limited by the federal employers' liability act. The case of *Cherpeski v. Great Northern Ry. Co.*, 128 Minn. 360, was almost identical as to the facts and was decided the same way. On the other hand, the latest case on the subject is *Hensley v. Chicago, St. P., M. & O. Ry. Co.*, decided by the supreme court of Nebraska July 2, 1929, 226 N. W. 421, but not yet officially reported, wherein it was held that a workman who was injured while removing from an interstate railway numerous items of iron and steel which had been rejected as unfit for use when the railway track had been repaired was not engaged in interstate commerce, and his right of redress against his employer was not governed by the interstate commerce act. We must therefore lay to one side these many conflicting precedents and come back to the test which the federal supreme court applied in the Pedersen and similar cases: Was the employee, at the time of the injury, engaged in work so closely related to interstate commerce as to be practically a part of it? Under all the evidence, about which there is no dispute, the rail had been taken from the track in the cypress yards and thrown on the side of the railway embankment some days prior to the day plaintiff was injured. Its usefulness as a rail was at an end. It was a matter of no consequence to the use of the yard track for either interstate or intrastate commerce whether the rail was ever taken to the junk pile or not. Paraphrasing the language of the Pedersen case, it was "a matter of indifference so far as that [interstate] commerce was

concerned" whether the rail was taken to the junk pile or left where it lay. The work which plaintiff was doing when injured had nothing substantial to do with interstate commerce, nor was his labor so closely connected therewith as to permit us to hold that it was a part of it. In consequence the federal employers' liability act did not apply, and the rights and liabilities of these litigants were properly determinable under the workmen's compensation act, and the judgment of the district court to that effect must be affirmed. In other respects, since the accident and injury and all proceedings pertaining thereto arose and were despatched while this court was without jurisdiction of appellate review in compensation cases, this appeal should be dismissed. It is so ordered.