No. 31,484

CORDA MAY BAXTER, a Minor, by ARVILLA BAXTER, Her Guardian, and ARVILLA BAXTER, *Appellees*, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant.*

(32 P. 2d 451.)

May 5, 1934.                                                             Opinion filed

*Luther Burns, J. E. DuMars,* both of Topeka, and *W. A. Barron,* of Phillipsburg, for the appellant.

*Miles Elson, J. T. Reed, T. D. Relihan* and *A. W. Relihan,* all of Smith Center, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is a compensation case. The Chicago, Rock Island and Pacific Railway Company and Emery Baxter, employee, were operating within the workmen's compensation law of Kansas.

Emery Baxter, it appears, was employed by the railway company in various capacities for several years, mostly in track work. Part of the time he was a section foreman, at other times he was a foreman of an extra gang. There was a point on the railroad near Prairie View where a culvert had originally been placed, consisting of five sections of 36-inch cast-iron pipe, weighing from 3,600 to 4,000 pounds each. The railway company decided to replace the culvert with a bridge, and when the bridge was completed there was no use for the pipes in the culvert. In building the bridge the pipes were found to be in the way and were directed by the road master to be removed. This task was undertaken by Baxter, and the pipes were first raised out of their beds by a jack. A roller was then put under one end and a rope attached to that end. A block and tackle were used and a team was employed to pull them aside. Baxter was using a pole as a pry in the operation. When the team first pulled on the rope it broke and let the weight of the pipe down on Baxter's shoulder, pushing him back and, as one witness said, crushing him. He immediately said that it hurt his side. The pipes were being handled on or about January 2, and he died on January 13. He was a reasonably healthy man, had worked for the company two years with the loss of but a single day, and complained about his side at the time of the accident. On or near the following day he had a vomiting spell and during the night threw up clotted blood. He then told his wife that he had lifted too hard the other day, and hurt himself. He said that when he was lifting, it felt like something had burst inside of him. He had had some stomach trouble and had taken soda for it. Considerable is made of the fact that a doctor testified that he had gastric trouble, something in the nature of gastric ulcers, and the claim is made that this was the cause of his death.

An application for compensation was made, and at the hearing an award was made of $4,000, one-half to Arvilla Baxter, the widow of Emery Baxter, and one-half to Corda May Baxter, their child, who was about twenty months old when her father died. There was added to this award the sum of $150 for funeral expenses and $200 for doctors and hospital. An appeal was taken from the award to the district court, and that court determined upon the evidence that the award should be and was affirmed.

There were objections and errors assigned and a claim that his death was due to a hemorrhage of the stomach due to gastric ulcers; that no demand or notice had been made by Arvilla Baxter, the widow; and that the claim relied on made on February 5, 1930, did not constitute a demand; that Corda May Baxter was not mentally incompetent within the meaning of the compensation act, and that the awards made were erroneous and unlawful, and further that at the time of the injury Emery Baxter was engaged upon an instrumentality of interstate commerce or transportation, and the case is beyond the purview of the workmen's compensation law.

As to the cause of death there was medical testimony sustaining the claim and supporting the award to the effect that the strain could and did cause his death. Some of the medical testimony was given by doctors upon an indifferent examination and based upon what had been told them of the history of the case by others. Some of it was very unsatisfactory and unconvincing. One doctor who gave an opinion that death was caused by gastric ulcers made a report to the vital statistics department that he had attended Baxter in his last illness and that:

"The principal cause of death and related causes of importance in order of onset were as follows:

"Hemorrhage from the stomach.

"Contributory causes of importance not related to principal cause: Traumatism by handling many drainage tiles or gastric ulcers.

"Was disease or injury in any way related to occupation of the deceased? Possibly."

Upon all the testimony the commission and the court held that the injury contributed to the death of Baxter, and the trial court, on this contention, made a finding as follows:

"The court finds that there was evidence tending to show that the said Emery Baxter had for some time prior to his injury and death, been afflicted with stomach trouble, and possibly gastric ulcers. The court finds, however, that his death was not due solely to such diseased condition, if he was in fact

so diseased, but that such condition, if it existed, would, under the evidence, necessarily have been aggravated by the injury to such an extent as to thereby cause his death."

The commissioner and the trial court had the right to weigh the evidence and determine what was worthy of belief, and did accept the testimony favorable to the claimant, and this court can do no more than to pass upon a question of law as to whether there is testimony to sustain the findings.

We cannot settle conflicts in the evidence nor say what testimony of the witnesses is worthy of belief. The commission and the trial court have performed that function and have determined that some of the witnesses were unworthy of belief, and have held that the injury was the contributing cause of the death of Baxter. Our conclusion is that the testimony is sufficient to uphold that view.

The proposition that a demand for compensation was not properly given by Arvilla Baxter to the railway company is more difficult. The statute provides that:

"No proceedings for compensation shall be maintainable hereunder unless a written claim for compensation shall be served upon the employer by delivering such written claim to him or to his duly authorized agent, or by delivering such written claim to him by registered mail within ninety (90) days after the accident . . . or within six (6) months after the death of the injured employee if death result from the injury . . ." (R. S. 1933 Supp. 44-520a. Laws of 1927, chap. 232, § 20.)

No formal notice was delivered to the railway company. It appears that B. H. Stiers, the adjuster of the railway company, learned of the accident, visited Mrs. Baxter and obtained a written statement from her. He called a stenographer, and upon his inquiry Mrs. Baxter gave him a long statement of her relation to Baxter, including their marriage, the birth of their child, Corda May Baxter; his employment and services with the railway company; spoke of the insurance having been taken out, and in answer to further inquiries she said: "I do not know the exact amount of funeral expenses, but know that the casket and vault cost $475. There was the lot, the digging of the grave and some other incidentals in addition that would make the cost something over $500."

She spoke of his health, that he had never lost but one day on account of sickness since their marriage; that he had a vomiting spell the day before his death, and on the morning of that day he asked her to go and tell his first man, Cogdill, that he was sick and would not be able to be out that day. That he continued to vomit during

the day and threw up clotted blood, and was sent to the hospital by the doctor and died at 2:00 p. m. on January 13, 1930. In speaking of his death she further stated that he had told her how "he lifted so hard on this tiling and felt like something had bursted inwardly." She also stated, "I do not know whether the Rock Island is responsible in any way for his death. On the first day of his sickness he told me that he had lifted awful hard on some tiling that they had taken out and were loading onto a car." When the statement was completed it was signed by Arvilla Baxter and carried away by Stiers, he telling her that she "would get funeral expenses anyway and maybe a little bit besides." Stiers said he "would be back as soon as he could. Such matters as this took quite a while. It took time to get it through the offices." Stiers did not return and this statement, if sufficient, was made in good time. It was made on February 5, 1930, about twenty days after the death of Baxter and thirty-three days after the accident and injury. It was in writing and clothed in the language of the answers made in response to inquiries. The accident and death had occurred and it is plain that these were the subjects of the inquiry. She conveyed the information requested, and it is evident that the responsibility of the railway company for the accident and death was under consideration. As to the cause of death she candidly said she was not able to say whether or not the railway company was responsible for it. The statement was solicited and procured by the adjuster, and with this written information of the claimant in its possession, can the railway company say that the company had no notice or knowledge of the accident and that the statement made. did not constitute a sufficient claim for compensation?

It is insisted by the respondent that the making of a statutory written claim is indispensable, citing *Sayers v. Colgate-Palmolive-Peet Co.*, 134 Kan. 872, 8 P. 2d 383; and *Klien v. McCullough*, 135 Kan. 593, 11 P. 2d 983, and that the statement does not satisfy the obligation imposed by the compensation act. It is argued that it does not indicate a claim or demand for compensation, nor a promise on the part of the employer to pay.

The question whether the statement so made is a compliance with the statute is one of consequence. There had been a number of cases where demands were claimed that were in ambiguous and doubtful terms and waivers of the demands were insisted on. In the amended act of 1927, the legislature apparently undertook to

meet the situation by prescribing in definite terms some protection to the employer by stating that no proceeding for compensation could be maintained unless the claimant shall within ninety days deliver to the employer or his agent a claim for compensation, or within six months in case of death. The evident purpose of the legislature was that the employer might have opportunity to test the validity of the claim while the facts were fresh as to the accident and when he might learn whether there was a real liability on his part under the statute. It provided that the claim should be written, should be delivered to the employer or his agent, that it should be personally delivered or sent by registered mail, and that this should be done within the prescribed time of ninety days after the accident unless the claimant was under certain specified disabilities, and there is no claim that Arvilla Baxter was under any of these. In *Sayers v. Colgate-Palmolive-Peet Co.*, supra, it was held that stricter compliance with the statute had become essential, that the legislature had stripped away the confusing refinements of the old statute and that the court cannot now sanction a rule which would revive the confusion concerning this phase of compensation as to demand from which the legislature had extricated the bench and bar.

It was also held that the adjuster could not waive the statutory requirements. In the later case of *Klein v. McCullough*, 135 Kan. 593, 11 P. 2d 983, the necessity for strict compliance with the later requirements was affirmed, and that a waiver based on disputable oral testimony would not do. It was said:

"This court is grateful to the legislature for the enactment of section 20 of the present statute, which emancipated the bench and bar, and the compensation commission as well, from the mess we were in touching the requirements of notice and demand and how they might be waived where no prejudice was shown—not to speak of our more or less constant distrust that such waivers were largely established by interested and questionable testimony. This court is not disposed to open another such Pandora's box of trouble by conceding that the plain letter of the statute can be circumvented by oral testimony to show a waiver of its requirement." (p. 597.)

While the statement made and relied on by the claimant was in writing and pertained to the death and compensation, it does not contain the semblance of a demand or claim for compensation, and there is no promise by the employer to pay it. The widow was under no disability and has no valid excuse for failing to present a demand under a statute which gave her six months for that purpose.

The court holds that the statement made to Stiers, the adjuster, is not a compliance with the requirement of the statute, and that the widow cannot maintain her proceeding for compensation.

Another contention of defendant is that Corda May Baxter, twenty months old, a normal child, cannot be deemed to be incompetent within the meaning of section 9 of the compensation act. At the death of her father, the baby was about twenty months old, and she was a normal child. The statute provides that when a claimant is mentally incompetent at the time when any right, privilege or election accrues to him, his guardian may on his behalf claim and exercise such right, privilege or election, and no limitation of time in this act provided for shall run so long as such incompetent has no guardian. (R. S. 1933 Supp. 44-509, Laws 1927, ch. 232, § 9.) A baby of such tender years, as all know, has not developed into competency and need not be insane to come within the excepted class. The law generally affords infancy protection, and it is needless to argue that a twenty-months-old baby is competent to care for legal rights, including the making of claims for compensation. Within the meaning of the act the baby was mentally incompetent, and the shifting of the word minor did not render her incompetent. Mental incompetency does not have to arise from mental disease. It may arise from a lack of development as well as from a diseased mind, and in either case the baby was within the excepted class. (See *Minturn v. Manufacturing Co.*, 102 Kan. 885, 172 Pac. 17.)

Another objection is that Baxter was engaged upon an instrumentality of interstate commerce or transportation and that the case is beyond the purview of the workmen's compensation law. If Baxter had been engaged and was injured while working on an interstate track, the objection might be good, but he was merely lifting pipes which had served their purpose and were in the way, and placing them on an embankment at the side of the railroad. Shortly afterwards the pipes were loaded upon cars and taken away, first to Norton, then to Fairbury, Neb., and finally to Texas, where they were used on a railroad that the company was building there. Baxter did not assist in loading the cars for shipment, and we think the removal of the pipes when Baxter was injured was a local transaction and within the compensation act. In *Cruse v. Chicago, R. I. & P. Rly. Co.*, 133 Kan. 340, 299 Pac. 624, material was being shipped from Iowa to the terminal yards in Kansas City, where the train

was broken up and the cars placed upon an assembly track to be unloaded and used at some future indefinite time. In deciding the case it was said:

"It had been received and accepted by the consignee and owner, and was to be moved and unloaded at some future time when and where it chose to dispose of the material. The yard was somewhat like a manufacturing plant in which the material was to be moved from one part of the plant to another, which would be regarded as a local movement rather than a part of interstate traffic. The handling of this material after it had been received must be regarded as local in character." (p. 343.)

It was held in that case that the plaintiff was not engaged in interstate commerce at the time of the accident within the meaning of the federal employers' liability act. A number of cases are cited in support of that view, to which reference is made. In *Begley v. Missouri Pac. Rld. Co.*, 128 Kan. 790, 280 Pac. 902, a rail in one of the switch tracks had been replaced in the track with a new one, and the discarded rail was left on the side of the railway embankment for a few days until plaintiff and several fellow employees were given the task of lifting it so that it could be placed on a push car and carried to a junk pile. While lifting the rail the plaintiff was injured. It was held that the work in which he was engaged at the time he was injured was neither interstate commerce nor so closely related thereto as to bring his right of legal redress within the purview of the federal employers' liability act.

A large number of cases are presented by the railway company which it is claimed support its theory on this question, but these we will not stop to analyze. It is enough to say that they do not apply to the facts in the present case. It is the view of the court that the case is within the purview of the compensation act.

It is further suggested that the award and allotment made by the commission and the court is not in the proper form, but we discover no error in it.

The judgment is reversed as to Arvilla Baxter and affirmed as to Corda May Baxter, the dependent child.

JOHNSTON, C. J. (dissenting): As to the sufficiency of the claim or demand for compensation, in my view the written statement made by Arvilla Baxter and given to the officer of the company is, I think, sufficient. The statement was solicited and procured by the adjuster, and with this written information of the claimant in its possession, how can the railway company say that the company

had no notice or knowledge of the accident and that the statement made did not constitute a sufficient claim for compensation?

It is insisted by the respondent that the making of a statutory written claim is indispensable, citing *Sayers v. Colgate-Palmolive-Peet Co.*, 134 Kan. 872, 8 P. 2d 383; and *Klein v. McCullough*, 135 Kan. 593, 11 P. 2d 983, and that the statement does not satisfy the obligation imposed by the compensation act. It is argued that it does not indicate a claim or demand for compensation, nor a promise on the part of the employer to pay. Compensation may be paid by agreement. The writing itself made to Stiers, the agent of the company, deals with the subject of compensation and made particular inquiry as to funeral expenses. He inquired about and incorporated in the statement the funeral expenses which are a part of the compensation to be paid, and these he said would be paid. The promise to pay them was not included in the written statement, but it shows what was the subject of consideration in the making of the statement. Defendant relies on *Richardson v. National Refining Co.*, 136 Kan. 724, 18 P. 2d 131. No formal demand was made in that case. The claimant did sign a statement stating the facts of his injury and showing that the matter of compensation was under discussion. In this case the statement was made by the claimant to the respondent, and at the same time the matter of claim was under discussion between the agent and the respondent in which it was stated she would receive the funeral expenses amounting to more than $500 and maybe some more. If she had voluntarily visited the company and made the statement could there have been any question but that the subject of compensation was under consideration? In *Richardson v. National Refining Co.*, supra, the court has this to say:

"It will be seen that the court has adopted the rule that it will look at the writing and the surrounding circumstances of the parties and, after considering all these things, place a reasonable interpretation upon them. The question is, did this man have in mind compensation for his injury when he signed the instrument heretofore set out, and did he intend by it to ask his employer to pay compensation? A further requirement is that it must be open to the reasonable interpretation that the employer would be expected to conclude that the employee was expecting compensation. It would be manifestly unfair to hold an injured employee to any particular form of claim, or to hold that he should be required to make a claim in a form that would satisfy a lawyer if he were preparing it." (P. 726. See, also, *Weaver v. Shanklin Walnut Co*, 131 Kan. 771, 293 Pac. 950.)

These authorities show that where the matter of compensation is under discussion with the employer and the writings indicate a desire to recover compensation, a definite formal demand therein is not necessary, and any reasonable interpretation of the statement made is a substantial compliance with the statutory requirement.

HARVEY and SMITH, JJ., concur in this dissent.