No. 32,637

DONNA JEAN WADE, a Minor, by ROSA IRETON, Guardian (Claimant), *Appellee,* v. THE SCHERRER & BENNETT CONSTRUCTION COMPANY (Respondent) and THE MARYLAND CASUALTY COMPANY (Insurance Carrier), *Appellants.*

(54 P. 2d 944)

Opinion filed March 7, 1936.

Allen B. Burch and A. W. Geiger, both of Wichita, for the appellants.
Harry O. Janicke, of Winfield, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was a workmen's compensation case. The question presented is one of dependency. The trial court found claimant to be wholly dependent and made an award accordingly. The employer and its insurance carrier have appealed.

The facts may be stated as follows: The workman, Otto E. Wade, and his wife, Myrtle, were married in July, 1926. To this union the claimant, Donna Jean Wade, was born December 2, 1931. The parties lived together as husband and wife at Winfield, in Cowley county, until July, 1933, when Mrs. Wade brought an action against her husband for divorce, on the ground of extreme cruelty. Summons in that action was not served on him personally for the reason that he could not be found in the county, and service was obtained by publication. On August 21, 1933, the court rendered a decree in that action, granting the wife a divorce from her husband and awarding to her the custody of their child. Because of the lack of personal service of summons on Otto E. Wade no order was made for him to pay any sum for the support of the child. Mrs. Wade took the child and went to the home of her parents, Mr. and Mrs. Ireton. About two months later she found employment at a tearoom in Arkansas City, and since then has been employed at that

work most of the time. Her wages have been from five to seven dollars per week and board. She has been able to provide support for herself, but not for the child, although she sent small sums or articles to her mother for the child from time to time. The amount or value of these is not shown, and they are treated as of no substantial consequence. Since August, 1933, to the time of the hearing in this proceeding the child has been cared and provided for by the grandparents. Mrs. Ireton estimates the actual expense thereof as five dollars per week. Otto E. Wade returned to Cowley county in the summer of 1934. He had just been released from a hospital, was in poor health, and unable to work. He saw Mrs. Wade in August and told her that as soon as he was able he would provide support for the child. He saw her on several occasions thereafter, urged her to remarry him, stated that he wanted to support both her and the child as soon as he could get employment, and because the child was not robust and he thought she might inherit tuberculosis, he wanted to take both of them, or at least the child, to a more suitable climate in Arizona or New Mexico. He also talked to others about his desire and intention of caring for the child as soon as he was in a position to do so. Later in the year he obtained employment and drew his first pay check shortly before Christmas. On January 31, 1935, while in the employ of respondent, operating under the workmen's compensation act, he sustained an injury by accident arising out of and in the course of his employment, as a result of which he died later in the day. He had made no actual contribution to the support of the child since July, 1933. Soon after the death of the workman Mrs. Ireton was appointed guardian for the child and filed this claim for compensation, contending the child was the sole dependent and was wholly dependent on the father.

After hearing the evidence the compensation commissioner found that the claimant, Donna Jean Wade, had no independent means of her own, was wholly dependent for support and maintenance, that such dependency rested upon Otto E. Wade, and that there was reasonable probability that the obligation would have been fulfilled, "it being specifically found that there was a right to support with some practical value; that is, that the deceased's legal duty would thereafter have been fulfilled by him, and it may, therefore, be said that there was dependency within the meaning of the compensation act," and awarded compensation to the claimant in the sum of $3,042, to be paid at the rate of $18 per week. The respondent and

the insurance carrier appealed to the district court. The court reviewed the evidence and confirmed the findings and award of the commissioner; hence, the appeal to this court.

Appellants present two questions: (1) Was Donna Jean Wade wholly dependent upon Otto E. Wade at the time of his injury and death so as to be a total dependent within the meaning of the workmen's compensation act; and (2), if she was not a total dependent, was she a partial dependent, and to what extent? The pertinent portion of our statute (R. S. 1933 Supp. 44-508 [j]) reads:

" 'Dependents' means such members of the workman's family as were wholly or in part dependent upon the workman at the time of the accident. 'Members of a family,' for the purpose of this act, means only legal widow or husband, as the case may be, and children; . . ."

Appellants contend the evidence is insufficient to support an award. They argue that to be a dependent of a deceased workman within the meaning of our statute above quoted one must be a member of the workman's family, as that term is defined in the statute, and also must be actually dependent upon the workman's wages for support and maintenance at the time of the accident which results in the death of the workman. They point out that this court heretofore has determined (*McCormick et al. v. Coal & Coke Co.*, 117 Kan. 686, 232 Pac. 1071) that whether a claimant is a dependent of the workman is a question of fact, and that the portion of our statute above quoted, having been taken from the English workmen's compensation act of 1906 (6 Edw. VII, ch. 58), should receive the same construction as that statute has been given in England. They therefore cite and rely largely on *New Monckton Collieries, Ld., v. Keeling*, 1911 A. C. 648, decided by the English House of Lords. This makes it necessary for us to examine that case and two other English cases. The headnote in the Keeling case reads:

"Whether a particular person was dependent upon the earnings of a deceased workman so as to have a title to compensation under the Workmen's Compensation Act, 1906, is a question of fact. At the death of a workman caused by accident his wife had not for more than twenty years lived with or been supported by her husband and had in no sense relied upon him for help: *Held*, that the wife was not entitled to compensation as a dependent upon her husband."

The facts were that in 1898 the workman's wife, claiming he was in the habit of thrashing her, left him, took her children with her, and went first to the home of her parents. He promised to pay her

something each week, but never did so. She worked for a time as a domestic, then in a factory, later kept house for two miners, and entirely supported herself for about twenty-two years. In that time her children were all grown and married. She never had seen her husband nor heard directly from him in all that time. He had stayed for a year or two at the place where they had lived, then left there. She wrote a few letters to him and had an attorney write to him, but these were unanswered, and for many years she did not know where he was. The court held she was not a dependent within the meaning of the workmen's compensation law. Four of the Lords wrote opinions in the case. Pertinent extracts from them are as follows:

LORD LOREBURN: "It is a question of fact whether a particular person is a dependent or not. The act was passed to provide compensation for certain people who should be damnified because the workman ceased to earn wages. If thereby they were either deprived of actual support or deprived of a source on which they did and would reasonably rely for it, they may be damnified to a degree greater or less according to the circumstances. The fact that a legal duty lay upon the workman to provide maintenance is an element to be considered, no doubt, because people usually count upon getting what they are entitled to get. But when, as here, the wife had not been supported for twenty years and in no sense relied upon the workman for any help, I think there was no evidence of dependency." (p. 648.)

LORD ATKINSON: The opinion reviewed the facts, and among other things said: "It is only necessary to read the provisions of the statute of 1906 and its schedule to see that the sums to be awarded under it are intended to be compensation for the pecuniary loss sustained by reason of the loss or cessation of the workman's power of earning. . . It is clear that the word 'injury' means damnum, and the main provisions of the statute shew that its object was such as I have mentioned. . . . Now as to this presumption of law upon which the award would appear to be based, no doubt the Court of Appeal have, in many decisions, laid it down that this presumption exists, and have tenaciously adhered to their opinion. (Reviews cases.) . . . It by no means follows, however, that though there is no presumption of law that a wife is dependent upon her husband's earnings merely because of his legal obligation to maintain her, this legal obligation is to be ignored in deciding on the fact of her dependency. On the contrary, the existence of the obligation, the probability that it will be discharged, either voluntarily or under compulsion, the probability that the wife will ever enforce her right if the obligation be not discharged voluntarily, are all matters proper to be considered by the arbitrator in determining the question of fact, whether, or not, the wife, at the time of her husband's injury, looked to his earnings for her maintenance and support in whole or in part. It is one of the many elements to be taken into account." (pp. 650, 651, 653.)

LORD SHAW: "As to the statute; what does it provide? It provides that

compensation shall be given, not to the members of the family of a workman who has lost his life by accident, but to those within that class (if any) who were dependent. . . . That term means 'such of the members of the workman's family as were wholly or in part dependent upon the earnings of the workman at the time of his death.' It appears to me, my Lords, that any expression . . . which amplifies this dependency so as to make it include a dependency upon the husband's 'obligations' or his 'legal liability' is not warranted by the statute itself. What the statute says is that the dependency is to be upon the husband's earnings. If obligations or legal liability were the tests, then dependency, in fact, at the time of the workman's death might in many cases be completely absent. The wife might be the possessor of a good going business. . . . I think that illustrates the dangers of departing from the language of the statute, which, upon the whole, is simple and clear. Cases involving a certain amount of refinement must occur, as always happens in practical affairs. . . The Act of Parliament seems to say: Among the relatives of the deceased workman, if there be those who depended for support upon his earnings, and who by his death have lost that support upon which they depended, then let them be compensated for that loss. . . . My Lords, what is the value of presumption in relation to the ascertainment and settling of truth in matters of fact? The legal value in such a relation is that it forms a guide where doubt exists; it assists elucidation where inferences might conflict; and it settles in one direction the balance of the judgment in favour of the establishment of truth which is only dimly or partially ascertained. But where the facts *are* ascertained, where there is no difference as to the inference which flows from them, and where the truth is plain and proved, I am at present at a loss to understand what is the value, or cogency, or appropriateness, of presumptions." (pp. 656, 657, 659.)

LORD ROBSON: "The wife does not necessarily cease to be dependent on the husband simply because the latter refuses to recognize or perform his obligation and succeeds in throwing the burden of her maintenance for the time being on the wife's parents or friend, or on the State. They may fulfil the husband's duty for him, but the wife's legal dependence is still on him and not on them, and his death deprives her of the proper stay and support on which alone she is entitled to rely." (The circumstance of this case, however, does not bring it within that rule.) (p. 662.)

The next case to be considered was decided by the Court of Appeals in 1912 (*Lee v. Bessie*, L. J. 1912, 81 King's Bench Div. 114). The facts were the workman, Lee, was a mate on the S. S. Bessie, which went down in October, 1909, with all on board. In March, 1911, his widow commenced proceedings to recover compensation for herself and two minor children, aged eight and ten, at the time of the father's death. Lee had left his wife in 1903 and gone to live with another woman, and since then his wife had supported herself and children. There was no evidence that Lee had paid anything toward the support of his children since he deserted his family in

1903.   The county court judge held that the widow was not, but the two children were dependent upon Lee at the time of his death. The employer appealed from that ruling.   It was held, following the Keeling case, that dependency was a question of fact and that there was no legal presumption of dependency in the case of infant children.   The county court was reversed.   Boulton, L. J., dissented on the ground that since the county court decision was prior to the decision of the House of Lords in the Keeling case, and at a time when the trial courts and courts of appeal had recognized legal dependency, that the proper course was to remit the case to the county court judge to be reheard.   In his separate opinion, after discussing the Keeling case and some others, he said:

"In my opinion the effect of this decision [the Keeling case] is that legal obligations to support must not be taken at their theoretic value, but at their practical value.  For instance, the mere fact that a husband is bound to support his wife does not establish that she is totally or at all dependent upon him within the meaning of the Act, if the circumstances are such that there is no reasonable probability that her rights would have been practically and effectually asserted.  But if on the evidence there is any fair probability that the legal rights would at any future time have been actually and effectually asserted by the wife, then there is evidence of dependency, and the compensation must be regulated by an estimate of her practical loss, subject to the provisions of the act.  (Quoting further from opinions in the Keeling case.)  . . .  I have now to consider in the light of this decision the position of the children.  Up to a certain age a father is compelable by law to support his infant children.  It may well be that the compulsion is indirect, and can only be effected through the medium of the poor law.  To my mind this is immaterial.  We have to consider the practical value of the existence of this legal duty; and though this may be modified by the indirectness of the machinery by which it is enforced, it is not taken away.  Indeed, in certain respects I think that the practical value of the obligation to support infant children is more likely to survive their absence from the father than is the practical value of the obligation to support a wife.  The wife's absence from her husband is often the result of her own choice or of her own conduct; and where she has done nothing to disentitle her to support from her husband it must be more or less by her own choice that she does not compel him to contribute to her support.  . . .  But no such thing can be said in the case of infant children, at all events so long as they are incapable of work and cannot do anything themselves to decide by whom they are to be maintained or with whom they shall live.  One can easily imagine cases in which they ought to be held to be almost wholly dependent on the father—as, for instance, when they are being supported by a mother who is herself too ill to be able much longer to work.  In my opinion, therefore, the decision (the Keeling case) although it does not refer to the case of infant children, logically carries with it the result that in their case the County Court Judge is bound to consider

the practical value of the father's legal obligations to support them, and that if he comes to the conclusion that there is a reasonable probability that this will be enforced in the future he is entitled and bound to hold them to be dependents and to award compensation accordingly." (pp. 117, 118.)

The next case to consider is *Potts v. Niddrie and Benhar Coal Co.*, 1913 A. C. 531, decided in the House of Lords June, 1913. The headnote reads:

"The question whether the members of the family of a deceased workman are dependent upon him, so as to be entitled to compensation under the Workmen's Compensation Act, 1906, is primarily one of fact, and the point for the consideration of the arbitrator is whether the right of support possessed by the applicants is of any actual or practical value. Therefore, where a workman had deserted his wife and infant children, and the wife had obtained a decree for aliment in the sheriff court and had arrested his wages under the decree, and he had subsequently removed in order to avoid further proceedings, and his wife had been unable to trace him, though she had endeavored to do so, *held*, that there was evidence that the children were dependents within the meaning of section 13 of the Workmen's Compensation Act, 1906."

"*New Monckton Collieries, Ld., v. Keeling,* 1911 A. C. 648, distinguished." (82 L. J. P. 1913, p. 147.)

The facts were that claimant was married to Young in June, 1891. There were four children. At the time of Young's death in April, 1911, one child was eight, another eleven, the other two adults. In 1907 Young deserted his family and went away. Since then the wife and family were maintained out of the earnings of the two older children and small earnings of the wife, hardly sufficient to support herself, and occasional sums which Young gave to the younger children when he met them on the road, such sums amounting to about two pounds during the two years immediately following his desertion. Young later got employment at another place, and then there was nothing received from him for the children. In June, 1909, the wife had an attorney write Young. He promised payment, but never paid. She then brought an action in the sheriff's court, where it was found that she was entitled to the custody of the two younger children, and an order was made against the father to pay a certain sum quarterly. Under this order she attached seventeen shillings of his wages. To avoid further efforts to get his wages he left that employment, and the wife and family heard nothing more from him until April 22, 1911. After he was hurt he had a card written to his oldest son, who went to where he was, but he was dead when the son reached there. A small sum then due him for wages

was paid to the claimant. The sheriff-substitute found that the two minor children were wholly dependent upon the workman, within the meaning of the compensation act, and made an award accordingly. In the alternative he found that in any event they were partially dependent upon him. The employer appealed from this order.

Three opinions were written by the Lords. The Lord Chancellor Haldane, among other things, said:

"The only question is, therefore, whether the two younger children were wholly dependent. It is only if this question is answered in the negative that any question as to partial dependence can arise. I am of opinion that the sheriff-substitute could properly hold that these children were wholly dependent. They had the right to look to their father for maintenance. . . . The children had no other means of support which could render their position one of partial dependence. It was only by assistance from their brothers, assistance which might have ceased at any moment, that they were saved from actual want. . . . (The Keeling case was distinguished.) The true question in the present case is, in my opinion, whether there was, as one of the facts to be taken into account, an effective and valuable legal right? If there was such a right, and there was no legal difficulty in the way of enforcing it, then the mere fact that a want of opportunity to resort to it, which might have proved only temporary, had reduced the mother and children for the time to living on charity, cannot affect the conclusion that by the father's death they lost something on which they could depend." (pp. 536, 537.)

Lord Shaw observed that it is impossible—

"to disturb this verdict except upon one of two grounds, either that the learned sheriff misdirected himself in some point of law, or that there was no evidence upon which his findings could legally rest. I am of opinion that neither ground of attack on the finding is good." (p. 538.)

He distinguishes the Keeling case, and says:

"Lord Moulton, if I may say so, apprehended with complete correctness the true meaning of *Keeling's Case* when he said, in *Lee v. Owner of Ship Bessie:* 'In my opinion the effect of this decision,' . . ." (copying that part of the opinion above quoted.) (p. 540.)

Lord Moulton in a separate opinion stressed the point that in this class of cases the question before the arbitrator is whether the legal right so possessed is of any actual or practical value, this itself being a question of fact.

We have discussed the English cases at length for two reasons: (1) Appellants argue they constitute the controlling authority on the subject, since our compensation act, particularly the provision here in question, was taken from the English compensation act of 1906. However, they cite the Keeling case only, but that case alone

gives an imperfect picture of the English decisions as they relate to the question to be determined in this case. (2) In the case before us the compensation commissioner and the district court, under the facts before them, reached a decision in harmony with the legal principles announced in the English decisions.

In this country, in states having statutes similar to ours, in passing on the dependency of children, when the workman for some reason had not contributed to their support for a time, the courts have followed the principles laid down in the English decisions. (*Sweet v. The Sherwood Ice Co.*, 40 R. I. 203, 100 Atl. 316; *Ocean A. & G. Corp. v. Industrial Com.*, 34 Ariz. 175, 269 Pac. 77 [see 32 Ariz. 54, 255 Pac. 598, for earlier decision in the same case]; *McGarry v. Ind. Com.*, 64 Utah 592, 232 Pac. 1090.) Even in states having a statute which differs somewhat from ours, and where the wife had procured a divorce and the custody of the child, the courts have applied the same principles in determining whether the child was a dependent of the workman at the time of his death.

(*State Ind. Acc. Com. v. Downton*, 135 Md. 412, 109 Atl. 63; *Ninneman v. Industrial Comm.*, 171 Wis. 190, 176 N. W. 909; *R. Sherer & Co. v. Industrial Acc. Com.*, 182 Cal. 488, 188 Pac. 798; *Pacific G. D. Co. v. Industrial Acc. Com.*, 184 Cal. 462, 194 Pac. 1; *Denning v. Star Publishing Co.*, 94 Ind. App. 300, 180 N. E. 685; *Crutcher v. Curtiss-Robertson Airplane Mfg. Co.*, 331 Mo. 169, 52 S. W. 2d 1019; *McManus v. Commissioner*, 113 W. Va. 566, 169 S. E. 172; *Shea v. Industrial Comm.*, 217 Wis. 263, 258 N. W. 779; *Panther Creek Mines v. Indus. Com.*, 296 Ill. 565, 130 N. E. 321; *Industrial Comm. v. Drake*, 103 Ohio St. 628, 134 N. E. 465; *Miller's Case*, 244 Mass. 281, 138 N. E. 254.)

These authorities sustain the view that a dependent of a deceased workman, within the meaning of the workmen's compensation law, must be within that class of persons named in the statute as dependents, and must be in fact dependent, in whole or in part, on the workman at the time of the accidental injury which results in death. They also hold that whether one who claims to be a dependent is within the class defined by the statute, and if so whether he was dependent on the workman at the time of his fatal injury, and if dependent whether wholly or in part dependent, and if only partially dependent the degree of dependency, are questions of fact to be determined by the commission or court provided by statute for weighing evidence, passing on credibility of witnesses, and determining the facts in compensation cases. In this state, so far as

this court is concerned, the fact-finding tribunal is the district court. Our own decisions, insofar as we have treated the questions, are not out of harmony with the authorities above cited.

(*Smith v. Sash & Door Co.*, 96 Kan. 816, 153 Pac. 533; *Taylor v. Sulzberger & Sons Co.*, 98 Kan. 169, 157 Pac. 435; *Ellis v. Coal Co.*, 100 Kan. 187, 163 Pac. 654; *Fennimore v. Coal Co.*, 100 Kan. 372, 164 Pac. 265; *McCormick et al. v. Coal & Coke Co.*, 117 Kan. 686, 232 Pac. 1071; *Routh v. List & Weatherly Construction Co.*, 124 Kan. 222, 257 Pac. 721; *Golden v. Wilson & Co.*, 129 Kan. 100, 281 Pac. 860; *Burgin v. Western Coal & M. Co.*, 132 Kan. 663, 296 Pac. 373; *Freeman v. Fowler Packing Co.*, 135 Kan. 378, 11 P. 2d 276; *Baxter v. Chicago, R. I. & P. Rly. Co.*, 139 Kan. 443, 32 P. 2d 451; 141 Kan. 527, 41 P. 2d 999; *Tisdale v. Wilson & Co.*, 141 Kan. 885, 43 P. 2d 1064.)

The fact that the workman had not used his wages for the support of the one claiming as a dependent does not necessarily defeat the claim; if so, the workman's child born after his fatal injury would not be a dependent, as they are universally held to be. (*Routh v. List & Weatherly Construction Co.*, supra.) Neither is compensation as a dependent necessarily defeated by the fact that a minor child of the workman for a time prior to his fatal injury had been temporarily cared for and maintained by charity, or by relatives or friends under no legal obligation to do so. (See the English cases, and cases from other jurisdictions in this country, above cited.) The child, being itself helpless, is by nature dependent on its parents, and particularly on the father, if he is the wage earner. The law makes the support of the child the duty of the parents, particularly of the father. The natural dependency is as strong or stronger than the legal dependency, but both exist. They cannot be ignored, but must be taken into account in determining the ultimate fact, namely, was the child a dependent of the workman at the time of his fatal injury? Circumstances may exist, certainly can be imagined, in which the trier of facts would be justified in finding— perhaps forced to find—that this natural and legal dependency had no practical value, in fact was worth nothing; hence, to be of no aid in supporting a claim of dependency. On the other hand, as in this case, the facts may be such as to indicate that this natural and legal dependency would be worth as much to the child, or substantially so, as though the workman, prior to his fatal injury, had been paying from his wages for the support of the child. In effect the commissioner and district court so found. This was a question

of fact, and we examine that finding here only to see whether there was substantial competent evidence to support it.  Here the evidence is the mother could earn enough to support herself, but not to support the child, and there is no evidence to the contrary.  It was found that the child had no independent income or means of support, and there is no controversy on that point; hence, the claimant was wholly dependent.  There is an abundance of evidence that the workman planned and intended to support claimant as soon as his health and his employment made it possible for him to do so, and on that point there was no conflicting evidence.  We cannot say these facts did not justify the finding that the claimant was wholly dependent on the workman, and that this dependency had a practical substantial value.  There is nothing which would justify us in setting the finding aside.

The judgment of the trial court is affirmed.

HUTCHISON, J., dissenting.