No. 29,534.

RAYMOND H. WEAVER, *Appellee,* v. THE SHANKLIN WALNUT COMPANY and THE LUMBERMEN'S RECIPROCAL ASSOCIATION, *Appellants.*

(293 Pac. 950.)

Opinion filed December 6, 1930.

*A. M. Etchen,* of Kansas City, for the appellants.

*T. A. Moxcey* and *Steadman Ball,* both of Atchison, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This is an appeal from a judgment of the district court affirming on appeal an award of compensation made by the

commissioner of workmen's compensation under the workmen's compensation act.

On May 14, 1928, Raymond H. Weaver was employed by the Shanklin Walnut Company to cut trees to be used in making lumber for that company. He was paid according to the amount of timber cut by him. On that day, while working in Missouri with another man, one of his legs was broken by a tree rolling onto him. He was treated by a physician in Missouri, who set the leg and placed it in a plaster cast. Afterward an X-ray picture was made of his leg, and he was then taken to his home on a cot. From there he was taken to a hospital in Sabetha, where another X-ray picture was made which showed that the bones were not in apposition. The fracture was reduced, but small pieces of bone were thereafter occasionally taken from the leg.

The defendant's foreman in charge of the work knew of the accident shortly after it occurred. On July 3, 1928, Weaver wrote to the Shanklin Walnut Company, as follows:

"I am writing you to ask if you sent me out some papers to fill out. Boyd Pierson said you sent me out some kind of papers to fill out which I have never received. He said they might have been sent to Albany. I thought they might of been of importance to you or me but didn't know so thought I would ask you about them and be sure. How are the boys at Albany getting along, are they getting out any Maple. Will close hoping to hear from you."

To that letter the Shanklin Walnut Company, on July 5, 1928, replied, as follows:

"Acknowledging receipt of your favor of the 3d, there seems to be some misunderstanding about any papers having been sent to you to fill out, as nothing of this sort will be necessary until the doctor pronounces you fit to work again.

"We are very sorry to learn of your accident, also that the first doctor failed to do a satisfactory job, but hope that you will soon be on your feet again."

On August 1, 1928, the defendant paid $102 for medical attention and $22 for hospital service.

1. The walnut company contends that it is not liable because no written claim for compensation was made within ninety days after the accident occurred.

Section 44-520a of the 1930 supplement to the Revised Statutes of 1923, in part, reads:

"No proceedings for compensation shall be maintainable hereunder unless a written claim for compensation shall be served upon the employer by de-

livering such written claim to him or his duly authorized agent, or by delivering such written claim to him by registered mail within ninety (90) days after the accident, or in cases where compensation payments have been suspended within ninety (90) days after the date of the last payment of compensation . . ."

If there was a written claim for compensation it was contained in the letter dated July 3, 1928, from Weaver to the Shanklin Walnut Company. The reasonable interpretation to be placed on the letter from Weaver is that he was then asking for compensation under the workmen's compensation law. A reasonable interpretation to be placed on the answer of the company to that letter is that the company understood that Weaver was claiming compensation. Under that claim the company paid for medical attention and hospital service. Under those circumstances it must be held that written claim for compensation, although informal, was made within ninety days after Weaver was injured.

2. The walnut company contends that Weaver was not an employee of the company, but was an independent contractor. This claim is based on the facts shown by the following evidence as set out in the abstract of the appellant:

"When I started working I received $7 a thousand for walnut and when we got to maple got $3 a thousand. I was always paid by the thousand board feet. I was paid most every week, whenever the foreman would send in the amount of feet. I reported to him the amount of work I had done. Our checks were mailed to us. I most generally worked six days a week. Sometimes we would work on Sunday. We cut the trees and cut them up into lengths, trimmed all the limbs off, clear as low as we could, free of knots. . . .

"I received $7 per thousand board feet for walnut and $3 per thousand board feet for maple. We sawed the trees off. In some instances they were marked and some they were not. I was told to cut certain trees of certain dimensions or size. Two of us operated the saw. We didn't have regular hours. The more we worked the more we got."

In *Pottorff v. Mining Co.*, 86 Kan. 774, 122 Pac. 120, this court declared that—

"An independent contractor generally is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to control of his employer, except as to the result of his work." (Syl. ¶ 2.)

In *Nordgren v. Southwestern Bell Telephone Co.*, 125 Kan. 33, 262 Pac. 577, this court said:

"Where one is employed by a telephone company to work by the piece on

an oral contract to trim and cut certain trees designated on a blue print. furnished and explained by the wire chief of the company, with definite and specific instructions to obtain permission from the owner of each lot before trimming or cutting any trees thereon, and to place such trimmings and trees in the alley where they are later hauled away by the company, he is not such an independent contractor as to relieve the company from liability for loss or injury sustained by his cutting trees not noted on the blue print, not interfering with the wires, and without permission of the lot owner." (Syl. ¶ 1.)

Under the evidence as herein outlined, and under *Pottorff v. Mining Co.,* supra, and *Nordgren v. Southwestern Bell Telephone Co.,* supra, it cannot be said that Weaver was such an independent contractor as rendered his employer not liable under the workmen's compensation act for the injury sustained by him.

3. The walnut company further claims that it is not liable for compensation because the physician who first treated Weaver was guilty of malpractice, which resulted in much of the plaintiff's injury. The plaintiff's leg was broken by the accident. The bone was crushed. It was set by a physician near the place of the accident. In a short time thereafter he was taken to his home and soon skillful hospital treatment was given him. Neither the compensation commissioner nor the trial court found that there had been malpractice. They allowed compensation. Under the facts submitted this court is unable to say that there was any malpractice. The determination of the trial court on that matter is conclusive in this court.

The judgment is affirmed.

BURCH, MARSHALL and JOCHEMS, JJ., dissenting.