No. 29,955.

J. M. Eckl, *Appellee,* v. Sinclair Refining Company, *Appellant.*

(299 Pac. 588.)

Opinion filed June 6, 1931.

*A. M. Etchen,* of Kansas City, *Carl E. Ziegler,* of Coffeyville, and *C. L. Canfield,* of Kansas City, Mo., for the appellant.

*Lorin T. Peters* and *Andrew F. Schoeppel,* both of Ness City, for the appellee.

The opinion of the court was delivered by

Smith, J.: This is an appeal from a ·judgment of the district court confirming on appeal an award of compensation made by the commission of workmen's compensation under the workmen's compensation act.

On August 18, 1928, appellee was employed by the Sinclair Refining Company as an agent for the selling and delivering of gasoline. On the morning in question he had just filled up his truck and hung the hose upon the hook when this hose fell, striking him

in the head and spilling gasoline over his clothing and body, especially into his eyes. At that time he was practically blind in his right eye. He alleges that this injury caused him to lose the sight of his left eye, so that now he is entirely blind. A doctor at his home treated this eye at once, and after two months pronounced him cured. Later he discovered that the eye was not making the progress in healing that he expected it to make, and examination disclosed a much worse condition. After over a year a hearing was had before an examiner of the workmen's compensation commission, which found that he was permanently totally disabled and awarded him compensation on that basis. The company appealed from that decision to the district court of Ness county, where the award was sustained. On the appeal to this court appellant argues that the award should be set aside because of incompetent evidence admitted on behalf of claimant by the examiner, because no claim had been made for compensation within the statutory period, and because the disability to the left eye of claimant was due to syphilis or other extraneous causes.

It urges that no claim was served upon the respondent by claimant within ninety days after the accident, and that if it should be held that a payment of $322, which was made, was actually a payment of compensation, that there was no claim filed within ninety days after this payment.

The injury occurred August 18, 1928. On November 12, 1928, claimant wrote the following letter to respondent:

"SINCLAIR REFINING COMPANY.

"Subject: Injury, J. M. Eckl.          NESS CITY, Ks., Nov. 12, 1928.
"*Mr. J. V. Dipple, Kansas City, Mo.*

"DEAR SIR—In reply to your letter of 10/30/28, I returned to my duties after my injury Oct. 22, '28. It was necessary for me to hire help from the 18th of Aug. to the 23d of Sept. Mr. Norrell from 18th of Aug. to 23d of Aug., $4 per day, $24. Mr. Mervin from 24th of Aug. to 23d Sept., $4 per day, $120. A total of $144 for help during this time.
                    "Yours very truly,      J. M. ECKL, Ness City, Ks.
"8-18 to 8-23, $24; 8-24 to 9-23, $120—36 days @ $4, $144."

After many conferences between claimant and different representatives of respondent, and pursuant to the above letter, the sum of $322.50 was paid to claimant on April 19, 1929. This amount included what was claimed in the above letter and an additional amount for doctor bills. On June 16, 1928, the following letter was written by Mrs. Joe Eckl, the wife of respondent, whom the record

shows carried on his business correspondence during the time in question on account of the fact that he was wholly blind:

"NESS CITY, KAN., 6/16/1929.

"*Mr. A. F. McCanney, Kansas City, Mo.:*

"DEAR SIR—The specialist advises me that the vision in Mr. Eckl's left eye is a complete and total loss with never a chance of ever restoring any vision to it. However, he examined his right eye and he says that there is a chance of restoring vision to it by removing the old cataract. However, he says that that eye is not yet in a condition ready to have the cataract removed at the present time, and just how much vision it will restore he can't say. At present Mr. Eckl is totally blind. Mr. McCanney, my expenses on Mr. Eckl's eye has been exceptional great and I am trying to get enough ahead to give Mr. Eckl's eyes these treatments and I am going to ask you as a favor to ask the credit department to send me commissions check without the usual outstanding account deductions for at least two months. I am paying one-half my commissions for a driver. Trying desperately hard to keep business going. You can readily see that after the one-half is deducted it doesn't leave a great deal, especially so after a few deductions have been made. The credit department has just recently made two deductions on the Adam Patterson account in the amount of ——. Mr. Patterson's account was secured by a note and mortgage on his wheat.

"I wonder if it would be possible for the credit department to reimburse me this amount, as I am desperately in need of this money at the present time. Harvest is at hand now and wheat here is wonderful and the farmers will no doubt have money. I have called personally on our accounts here since Mr. Eckl's eye has been ill, and they have promised to pay me just as soon as their wheat is marketed. I am going after each one of these and if possible collect every one of them. I'll thank you very kindly for any favors you can render me. And trusting to hear from you at once, I am

"Respectfully yours,     MRS. JOE ECKL."

The first letter above set out was written within ninety days after the accident and the second letter was written within ninety days after the only payment that was ever made to claimant by respondent growing out of this injury. This court has held that there is no formality necessary about the claim made by an injured workman for compensation under the workmen's compensation act. (*Weaver v. Shanklin Walnut Co.*, 131 Kan. 771, 293 Pac. 950.) The reasonable interpretation to put on these letters is that what the claimant had in mind was the collection of compensation. During the year subsequent to the occurring of this accident four or five representatives of respondent talked to claimant about his injury, so that they must have had knowledge that he was claiming and would claim compensation. It cannot now be heard to complain because the claim filed was not a formal one. The purpose of the requirement about the written claim is to enable the employer to know about

an injury in time to investigate it. Besides the two writings above set out the record discloses that three or four other reports in writing with reference to this injury were made by agents and employees of respondent during the year and a half subsequent to the time of the injury. The company had ample opportunity to learn all about this case. We conclude that there is no merit in the contention that no written claim was filed by claimant.

The doctor who first treated claimant's eye some time subsequent to the occurrence of the injury caused a Wassermann blood test to be taken to ascertain whether or not claimant was afflicted with syphilis. This test was returned with a mark of 4 plus, which is a diagnosis of syphilis. During the year claimant was sent by the county to a hospital in Kansas City, where Doctor Curran, of that city, treated him both as to his right and left eye. An interne from the hospital in Kansas City wrote a letter to a local doctor in which he stated that salvarsan had been given to claimant and he had not shown any improvement. This letter was offered in evidence by claimant and was received over the objection of respondent. Its importance is that it is a well-known fact that if an injury to the eye does not respond to treatments of salvarsan, then the trouble is not caused from syphilis, and it was introduced for that purpose. Respondent urges that this letter was the only evidence before the examiner of the workmen's compensation commission that the eye lesion complained of by claimant, which finally made him blind, was not the result of syphilis. Such, however, is not the case. The record discloses that the local doctor testified as to a test he made of the eye, which enabled him to reach the conclusion that the particular lesion was not a syphilitic lesion. There was evidence to warrant the district court in reaching the conclusion that it did reach, and it is presumed by an appellate court that it reached the conclusion upon the competent evidence and did not use the incompetent evidence. We find no reason for overturning the award of the workmen's compensation commission on account of the admission of the letter from Kansas City. (*Reeves v. S. R. Oade,* 124 Kan. 423, 260 Pac. 609; *State Bank v. Weiser,* 117 Kan. 389, 232 Pac. 613, and cases there cited.)

As to the claim of respondent that the disability was due to syphilis or other extraneous causes, the record discloses that the test made by the doctor indicated that the injury was not due to syphilis. The doctor further testified that he thought on October 24 claimant had progressed so that he anticipated his condition

would clear up and that he would be all right, but within a few days the claimant showed symptoms of the rings of light that he would see when looking at the light, cupping of the optic disk and an increased tension of his eye, indicating that he was developing glaucoma. He also stated that the splattering of a great deal of gasoline into an eye would produce this condition. No evidence was offered by respondent to meet this. The appeal to this court from a finding of a district court sustaining or overruling an award of the workmen's compensation commission is on a question of law only. The examiner for the workmen's compensation commission heard the evidence in this case and arrived at a determination that disability to claimant was due to gasoline being splashed into his eye. There is ample evidence to sustain this conclusion and it will not be disturbed by this court.

The judgment of the lower court is affirmed.