No. 30,180.

Hugh Harrigan, *Appellee*, v. The Western Coal and Mining Company, *Appellant.*

(300 Pac. 1115.)

Opinion filed July 3, 1931.

*J. M. Challiss*, of Atchison, for the appellant; *W. P. Waggener, O. P. May* and *B. P. Waggener*, all of Atchison, of counsel.

*A. L. Majors*, of Columbus, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This is an appeal from an award of compensation to a workman who sustained injuries in his employer's coal mine, resulting in the loss of one eye and an almost total and permanent disability of the other.

The pertinent facts were these: On January 20, 1928, the appellee, Hugh Harrigan, and a fellow workman were operating a pump

in the coal mine of the Western Coal and Mining Company in Cherokee county. The mine water was red and stagnant and charged with foul elements injurious to the eyes. The pump was not functioning properly and Harrigan stooped to see what was wrong with it. While so engaged the packing of the pump blew out and the foul water was thrown into his eyes, so greatly injuring them that the left one had to be removed within a few days, and the injury to the right eye was such a source of pain and anxiety to the workman that he had to make two protracted sojourns in a Kansas City hospital for its treatment. Eventually its vision, too, was found to be too greatly impaired to be industrially useful to him.

That the injured workman was entitled to compensation was conceded without the formality of a demand and award by the compensation commissioner. The cashier of the appellant company made a computation based upon 60 per cent of appellee's average weekly wages and on the assumption that his accident and injury would only result in the loss of one eye. On that basis and assumption the cashier advised the claimant that he would be entitled to $15.58 per week for 110 weeks. Harrigan expressed a desire to have $500 advanced to him so that he would have funds to go to a hospital to have his remaining eye treated. The cashier took up this matter with the defendant company and an arrangement was effected whereby the sum of $372.32 was advanced to appellee and his weekly compensation correspondingly reduced from $15.58 to $12 per week.

Payments of compensation pursuant to this amicable arrangement were made for 110 weeks, at the end of which period (April 19, 1930) they ceased. Within ninety days thereafter, on May 22, 1930, appellee served written notice and demand for compensation at $18 per week for the loss of his left eye and for a similar amount for one-half of the loss of the sight of his right eye.

The respondent mining company filed an answer, alleging that the injury which claimant had sustained in its coal mine in January, 1928, had affected his left eye only; that it had effected a settlement with him therefor on March 27, 1928, whereby it had agreed to pay him $15.58 per week for 110 weeks, which agreement it had faithfully kept until April 19, 1930, and that it had paid him the agreed total sum of $1,713.80; but that claimant had refused to execute final release therefor, although he had signed a receipt for the compensation paid him, and that this instrument had been filed·with the

compensation commission within sixty days after the last item of compensation had been paid to the claimant.

Defendant's answer also pleaded that the time, place and particulars of the accident to claimant's right eye had not been given to it within ten days, and defendant did not have actual knowledge of the injury to claimant's right eye; that no written claim for compensation was made upon it within ninety days after the accident; that no proceedings were instituted within one year after the date of the agreement for compensation to have it set aside, and that for these and other reasons needless to repeat defendant denied liability.

To this answer claimant filed a reply alleging that no agreement of settlement was ever made between claimant and respondent prejudicially affecting his right to compensation as provided by statute; that he did not intentionally sign any instrument to that effect; that no written agreement purporting to settle his compensation had been filed with the compensation commission as required by statute and that any such purported agreement was void.

The matter was heard before certain examiners for the commission, and an award in claimant's behalf was made allowing compensation at the rate of $18 per week for 415 weeks, and finding that $830 thereof was overdue and payable at once and that payments of $18 per week should commence at the time of the award and continue for 270 weeks. While the basis of this award is not indicated in the record, it appears to have been an award for the loss of both eyes—loss of one and loss of use of the other—for which the statute allows 60 per cent of the workman's average weekly wages for eight years, with a deduction for the 110 weeks' payments of $15.58 per week made by the respondent prior to the institution of formal proceedings before the compensation commission.

The respondent appealed to the district court from this award, and on a review of the record made before the compensation commission that tribunal made its own findings of fact and conclusions of law, not greatly at variance with those of the commission. Part of the court's findings read:

"Second: That as a result of said accident, the left eye of the claimant was totally destroyed and had to be removed within a short time after the accident. That as a result of said accident the right eye of the claimant was injured and became inflamed and resulted in scar tissue forming over the sight of the right eye, destroying at least three-fourths (¾) of the vision of the right eye, and to such an extent as to destroy sufficient sight of said eye as to render claimant industrially blind. That as a result of said accident the claimant has suffered

a total and permanent disability and been left in a condition that he is unable to follow his avocation as a coal miner or any avocation that requires the use of the eyesight.

"Third: That claimant's average weekly wage at the time of the injury was in excess of $30 and the amount the claimant is entitled to for total permanent disability is $18 per week, and that any agreement or understanding that less amount was due, was entered into by and through the mutual mistake of both parties and such agreement, if any, is hereby set aside and held to be of no legal force and effect.

"Fourth. . . . That a certain agreement was entered into between the claimant and respondent to secure for the claimant an advance of money to have his right eye treated, and it is contended by the respondent that this agreement should be construed and held as a final settlement of compensation by the agreement of the parties. The court finds, however, that this agreement was not filed with the commissioner of compensation within the time or in the manner prescribed by law and it is, therefore, considered unnecessary for the court to construe the meaning of the said agreement.

"Fifth: The court finds that compensation was due to the claimant from the respondent at the rate of $18 per week for 415 weeks, $1,780 of which has been paid, leaving a balance due and payable in the sum of $5,690, $1,118 of which is now due and payable in a lump sum, and the claimant is entitled to receive, in addition to the above sum, the sum of $18 per week until he has received, in all, 415 weeks' compensation."

Judgment was entered accordingly, and defendant appeals, urging various objections to the judgment.

The first objection is that no demand for compensation for injury to the right eye was made for more than two years after the accident. This contention is only a half-truth. No formal demand for compensation for injury to either of the claimant's eyes was made. Defendant began to pay compensation without demand. It asserts, of course, that it merely paid for the loss of the left eye, but the claimant never assented to the voluntary award of $15.58 per week for 110 weeks, or the payment of $12 per week and $372.32 advance payment, as all the compensation due him for the loss and injury to both his eyes. Defendant can hardly be heard to say that it did not know the workman's right eye was injured, otherwise there would be no apparent reason why it should have given him an advance of $372.32. The triers of fact have accorded credence to the workman's evidence that he apprised his employer as to the purpose for which he asked that advance—to obtain funds to go to a hospital to try to have his other injured eye saved. Defendant suggests the existence of an analogy between this case and that of *Murphy v. Cook Construction Co.*, 130 Kan. 200, 285 Pac. 604. In that case

compensation proceedings for the loss of one eye were formally instituted, an award allowed and final payment made, and more than ninety days elapsed thereafter before any demand was made for compensation for an injury to the second eye. Here none of these conditions existed. In *Schweiger v. Sheridan Coal Co.*, 132 Kan. 798, 297 Pac. 688, which is another case cited by defendant, this court said:

"It is true, of course, as was noted in *Murphy v. Cook Construction Co.*, 130 Kan. 200, 285 Pac. 604, that where a claim for compensation has been timely made and an award made thereon, such award may afterwards be raised or lowered before final payment is made, if subsequent developments should justify it. The statute makes provision for that possibility (R. S. 44-528), and this court would not hesitate to make it apply to a situation where compensation was being paid without the formality of an award having been made by the compensation commissioner." (p. 801.)

The voluntary payments of compensation for many weeks were sufficient acknowledgment of the company's cognizance of claimant's injury sustained in its service, and whether such payments were made for injuries to one eye or to both was a mere question of fact. Moreover, the statute contemplates the possibility that other injuries than the one for which compensation is being paid may belatedly develop out of the same accident, and it therefore provides for an increase of compensation upon a timely and proper showing therefor. Here the question reduces to this simple proposition: If an employer pays compensation to a workman without the formality of notice, demand, and a formal hearing before the compensation commission, or without invoking the services of the statutory committee of arbitration, does the workman lose any of the advantages to which he would otherwise be entitled under the compensation act? We hold not. So long as the employer pays compensation sufficient to indicate an acknowledgment of his liability to his injured employee the employee need not invoke the formal proceedings outlined in the statute. When this informal payment of compensation is suspended, and the injured workman considers that he has not been fully paid, he must invoke the statutory steps within ninety days. (R. S. Supp. 1930, 44-520a; *Fougnie v. Wilbert & Schreeb Coal Co.*, 130 Kan. 410, 286 Pac. 396, syl. ¶ 2.) Here the workman did invoke them within that time. He therefore lost nothing by accepting such compensation as his employer chose to give him prior to the suspension of compensation payments on April 19, 1930.

Appellant argues that there was no causal connection between the accident and the claimed injury. It cannot be denied that there was *some* evidence of such connection, and as our jurisdiction is limited to a review of questions of law it is useless to debate questions of disputed fact in this court. (R. S. Supp. 1930, 44-556; *Corpora v. Kansas City Public Service Co.*, 129 Kan. 690, 284 Pac. 818.)

Defendant presses upon our attention the agreement and final receipt. Touching such agreements the statute reads:

"Compensation due under this act may be settled by agreement; subject to the provisions contained in section 27 of this act." (R. S. Supp. 1930, 44-521.)

Section 27 (R. S. Supp. 1930, 44-527) provides that agreements pertaining to compensation must be filed with the commission. The trial court's fourth finding says that the agreement was not filed with the commission within sixty days as required by law (R. S. Supp. 1930, 44-526), and it is therefore of no legal significance.

So far as concerns the matter of a final receipt, it does not appear that any such instrument exists. Appellant refers to the hardship resting on an employer when the workman who has been paid in full refuses to execute, acknowledge and verify the final receipt. (R. S. Supp. 1930, 44-527.) But that is a matter for legislative and not for judicial correction.

The next point discussed by appellant relates to the fact that one examiner heard the proceeding and the report of the award was signed by another. This is of no importance. It is the approval of the compensation commission which gives vitality to an award, and who or how many of its subordinate functionaries acted in getting the evidential details together for the commission to act upon is of no consequence.

A painstaking study of this record discloses nothing which would permit or excuse a disturbance of the judgment. It is therefore affirmed.