No. 31,906

James F. Flanagan, *Appellant,* v. H. M. Lux, The Underhill Construction Company and The Lumbermen's Mutual Casualty Company, *Appellees.*

(40 P. 2d 458)

Opinion filed January 26, 1935.

*Frank E. Miller* and *Leonard S. Ferry,* both of Topeka, for the appellant.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery* and *M. F. Cosgrove,* all of Topeka, for the appellees.

The opinion of the court was delivered by

Hutchison, J.: This is a workmen's compensation case in which the appeal to this court is taken by the claimant from the judgment of the district court dismissing the action for failure of the claimant to make the written claim for compensation within ninety days after the date of the accident, or within ninety days after the date of the last payment of compensation, as required by R. S. 1933 Supp. 44-520a.

Practically all the other matters usually involved in compensation cases were stipulated before the compensation commissioner, and findings and an award were there made, from which both claimant and respondent appealed to the district court, where the evidence was reviewed and the following findings (omitting the first) were made:

"2. That on March 6, 1930, the claimant sustained a personal injury, by accident, which arose out of and in the course of his employment, at which time he was an employee of H. M. Lux, subcontractor under the respondent,

Underhill Construction Company, all of which parties were subject to the workmen's compensation law of the state of Kansas;

"3. That on March 6, 1930, the claimant sustained a personal injury by accident by which he lost the sight of his right eye. Claimant had lost the sight of his left eye about forty (40) years prior thereto, and the loss of the sight of his right eye, together with his prior injury, made him permanently and totally disabled;

"4. The respondent, Underhill Construction Company, had actual notice of the accidental injury on or about March 6, 1930, the date of the accident;

"5. The only written claim for compensation which claimant contends was served upon the respondent, Underhill Construction Company, within ninety (90) days of the accident was a letter dated April 14, 1930, addressed to the Underhill Construction Company and signed by Marie Brindell, secretary of the Workmen's Compensation Commission, which letter is as follows:

'April 14, 1930—*In re: J. F. Flanigan v. Harry M. Lux (Underhill Const. Co.)*

LIBERAL, KANSAS.

'The Underhill Construction Company:

'GENTLEMEN—We have been asked by Dr. Emery Trekell, of Liberal, Kansas, to assist in getting payment for his bill for medical services rendered the above workman who was injured while working on the Hotel Warren in Liberal, Kansas.

'We understand you were engaged in the construction of this new hotel and request that you file with us the accident report for the above accident.

'Kindly inform us also as to the name and address of your insurance carrier in order that we may take up with them the question of the medical expense.

'Very truly yours,

'Secretary of Workmen's Compensation—M. B.'

"6. Said letter of April 14, 1930, was received by the Underhill Construction Company and by it referred to the attorneys for the insurance carrier of the subcontractor. The Underhill Construction Company had a contract with H. M. Lux, the subcontractor, requiring him to carry workmen's compensation insurance on his employees;

"7. The attorneys for the subcontractors' insurance carrier wrote the Commissioner of Workmen's Compensation acknowledging receipt of the letter of April 14, 1930, and shortly thereafter claimant began to receive compensation from the Federal Surety Company, the insurance carrier for the subcontractor. Medical expense incurred by Flanagan was thereafter paid by the Federal Surety Company.

"8. Payments of compensation were made to the claimant by the Federal Surety Company, the insurance carrier of H. M. Lux, in the amount of $1,386, as weekly compensation, and $738 for medical expenses. The last compensation payment made was received by claimant on September 3, 1931, covering the compensation for the week of September 3 to 10, 1931. The Federal Surety Company was placed in receivership on September 25, 1931. On or about October 11, 1931, the claimant received a copy of a letter addressed to H. M. Lux, the subcontractor, stating that the Federal Surety Company had

been placed in receivership and the receiver had determined that the receivership could not continue with payment of claims.

"9. That on December 31, 1931, claimant filed in the office of the Commissioner of Workmen's Compensation an employee's claim for compensation, in writing, dated December 26, 1931, a copy of which was forwarded to respondent on January 7, 1932;

"10. The court finds that there was no evidence that claimant knew of Doctor Trekell's having asked for assistance in getting payment of his bill or that the claimant knew of the secretary of workmen's compensation having written this letter of April 14, 1930;

"11. That at the hearing before the commissioner of workmen's compensation claimant offered in evidence the letter of April 14, 1930, as a claim for compensation upon his behalf;

"12. The court finds that the claimant did not serve a written claim upon the Underhill Construction Company within ninety (90) days after said accident;

"13. The court finds that payments of compensation were suspended and that claimant did not serve a written claim for compensation upon the Underhill Construction Company within ninety (90) days after the last date of payment of compensation."

There was sufficient evidence to support these findings.

It has been held that there is no necessity for the making of a second written claim after one has been made fully complying with this requirement, if the action is commenced within a reasonable time. (*Lenon v. Standard Oil. Co.*, 134 Kan. 289, 5 P. 2d 853.) So that if either one of these two efforts fully met the requirements of the law as to making and serving claims, the claimant would be entitled to maintain compensation proceedings.

Again, it is shown in the findings that there was a contractor and a subcontractor, and each had insurance carriers, and that the subcontractor took bankruptcy proceedings and his insurance carrier went into the hands of a receiver after having paid compensation to this claimant without any action, award or judgment for seventy-seven weeks. It has been held in effect that if the subcontractor is bound, the contractor is likewise ordinarily bound. (*Williams v. Cities Service Gas Co.*, 139 Kan. 166, 30 P. 2d 97, and R. S. 1933 Supp. 44-503.) And even if payments were made by agreement with the subcontractor without an action, as in this case, and such payments then ceased, it has been held that the principal contractor would be liable, if written claim should be made on him within ninety days after the date of the last payment made by the subcontractor. (*Pribbenow v. Meeker,* 139 Kan. 325, 31 P. 2d 15.) So the controversy here involved is reduced to one question only,

viz., Did either one of the two claims urged by the claimant fully and completely comply with the statutory requirement, not as a notice of an injury, but as a written claim for compensation, which is a prerequisite to the right to maintain compensation proceedings?

Considerable is said in the briefs in this case about the entire compensation act, including this provision as to the making of a written claim, being entitled to liberal construction. · In the case of *Suttle v. Marble Produce Co.*, 140 Kan. 13, 34 P. 2d 116, that feature was under consideration, and a distinction was there made as to the legislative intent of this requirement in the following language:

"A reference to the statute on another preliminary matter· shows plainly a widely different view of the legislature as to the importance of two preliminary matters as to being liberally or strictly construed. The section here under consideration begins as follows: 'No proceedings for compensation shall be maintained hereunder unless,' etc. The next preceding section, which provides for the giving of a notice of the injury, concludes as follows: *'Provided further,* That want of notice or any defect therein shall not be a bar unless the employer prove that he has been prejudiced thereby.'" (p. 16.)

Until 1927 the two preliminary requirements above mentioned were in the same section of the statute, the first, a notice to be given concerning the injury within ten days after the accident; the other, a written claim for compensation within ninety days after the accident, or within ninety days after the last payment of compensation. In 1927 these two preliminary requirements were separated. The former is now R. S. 1933 Supp. 44-520, and the latter is R. S. 1933 Supp. 44-520a, so that many of the earlier decisions on this question were construing the old law where the two provisions were grouped in one section. The earlier statute did not require the claim to be in writing, but did require the ten-day notice of injury to be in writing. It did, however, provide that the failure to make a claim within three months should be a bar to any action for compensation. The new enactment of this requirement, being section 20 of chapter 232 of the Laws of 1927, or R. S. 1933 Supp. 44-520a, omitting the portion as to disabilities, is as follows:

"No proceeding for compensation shall be maintainable hereunder unless a written claim for compensation shall be served upon the employer by delivering such written claim to him or to his duly authorized agent, or by delivering such written claim to him by registered mail within ninety (90) days after the accident, or in cases where compensation payments have been suspended within ninety (90) days after the date of the last payment of compensation."

The injured party is generally referred to in the compensation act

as the claimant, and, as the word indicates, he is naturally the one expected to make the claim, although that part of the statute above quoted does not so state, but in the concluding part of said section it is specifically stated that if the claimant has been under disability, the time shall not begin to run until the removal of such disability.

The accident in this case, as shown by the findings, was on March 6, 1930. The letter relied upon as a written claim was written by the secretary of the compensation commission on April 14, 1930, to the contractor, the Underhill Construction Company, stating that a doctor had asked the commission to assist him in getting payment for his professional services, asking the construction company for the name and address of the insurance carrier "in order that we may take up with them the question of medical expense." This letter was forwarded by the construction company to the attorneys for the insurance carrier for the subcontractor, by whom claimant was employed. The claimant did not know of the doctor's writing the compensation commission, nor of the commission writing the letter to the construction company. As far as the first written claim is concerned, the claimant did not have anything to do with it or any knowledge of a claim being made. The doctor asked the compensation commission to assist in getting payment of his bill for medical services.

The contention of the claimant is that the letter of April 14, 1930, written by the compensation commission, was sufficient to apprise the construction company that compensation in the way of medical expenses of the injured party was being demanded, and that it was treated by the construction company as a demand for compensation.

Counsel for claimant cite many cases where it has been held that a formal claim is not required, as *Klein v. McCullough*, 135 Kan. 593, 597, 11 P. 2d 983, and in *Eckl v. Sinclair Refining Co.*, 133 Kan. 285, 299 Pac. 588, where the injured employee wrote the first letter and signed it himself and his wife wrote the next one in his behalf, speaking of needing money to pay a substitute while he was unable to work on account of the injury, and it was held "it is sufficient if it advises the employer that the injured employee is claiming that he should be paid something as a result of the injury;" (syl. ¶ 1) and, as in *Richardson v. National Refining Co.*, 136 Kan. 724, 18 P. 2d 131, where it was said:

"It would be manifestly unfair to hold an injured employee to any particular form of claim, or to hold that he should be required to make a claim in a form that would satisfy a lawyer if he were preparing it." (p. 727.)

Also, in *Weaver v. Shanklin Walnut Co.,* 131 Kan. 771, 293 Pac. 950, where the letter from Weaver, the injured employee, was called in question, it was said in the opinion concerning it:

"The reasonable interpretation to be placed on the letter from Weaver is that he was then asking for compensation under the workmen's compensation law. A reasonable interpretation to be placed on the answer of the company to that letter is that the company understood that Weaver was claiming compensation." (p. 773.)

In every one of these cases cited as to no formality of the claim being required, only such as would advise the employer that the injured employee was claiming compensation for the injury, the letters or claims were written by the injured party, except in one case a second letter was written by the wife of the injured party for him and in his behalf, after he had written the first one. We are not advised of any provision in the compensation law whereby a creditor of the claimant may cause to be made the written claim or demand for compensation, nor are we directed to any provision in the compensation law which makes the compensation commission the agent of the injured employee without his knowledge or consent or indirectly the collector of medical bills for his creditors without his knowledge or consent. If such is the authorized business of the compensation commission, with its recognized efficiency, there should be no excuse needed nor apology made for its failure to prepare and have in readiness for use a form of written claim with sufficient formality to "satisfy even a lawyer," as was stated in the Richardson case, supra.

The case of *Honn v. Elliott,* 132 Kan. 454, 295 Pac. 719, is cited, in which the court held that a copy of a verified and detailed claim for compensation made by the injured employee, and filed with the compensation commission, when forwarded by the commission to the contractor was a compliance with the statutory requirement as to the making and serving of a written claim.

In the case of *Suttle v. Marble Produce Co.,* 140 Kan. 13, 34 P. 2d 116, a written claim was held to be insufficient. It was a letter to the insurance carrier written by the insurance agent at the joint request of the widow of the deceased employee and the employer, and because it was more in the nature of an inquiry as to liability it was held to be widely different from a claim for compensation. The following cases were cited in connection with that conclusion: *Weaver v. Shanklin Walnut Co.,* 131 Kan. 771, 293 Pac. 950, *Eckl v. Sinclair Refining Co.,* 133 Kan. 285, 299 Pac. 588; and *Klein v. McCullough,*

135 Kan. 593, 11 P. 2d 983. In the latter case the injured workman and the employer together had a clerk fill out a blank furnished by the compensation commission and sent it in, and it was in fact only a report of the accident, although the commission held it to be sufficient for a demand and waiver, but in this court it was held to be neither.

In the case of *Murphy v. Cook Construction Co.*, 130 Kan. 200, 285 Pac. 604, a formal claim had been filed for the loss of the right eye and an award obtained. Later, and more than ninety days after the accident, another claim was made by the injured employee for the loss of the other eye as a result of the same accident, and it was held the belated claim was properly denied. See, also, the result in the case of *Harrigan v. Western Coal and Min. Co.*, 133 Kan. 573, 300 Pac. 1115.

The demand in the case of *Williams v. Cities Service Gas Co.*, 139 Kan. 166, 30 P. 2d 97, was written for the claimant by his attorney, and concluded as follows: "I am handing you herewith notice of demand for compensation."

In the case of *Sayers v. Colgate-Palmolive-Peet Co.*, 134 Kan. 872, 8 P. 2d 383, the injured employee was taken by the respondent to the hospital immediately after the accident and obtained from him shortly after the accident a written statement of the accident and injury, and in the furnishing of the evidence for such statement the question of getting compensation was freely mentioned, and the court held this was not a claim for compensation, referring to the imperative requirement since the change in the law in 1927.

In the case of *Baxter v. Chicago, R. I. & P. Rly. Co.*, 139 Kan. 443, 32 P. 2d 451, the widow of the deceased workman furnished the agent of the respondent the information concerning the accident to, and the illness and death of her husband. She gave him the funeral and other expenses and spoke of the responsibility of the respondent for his death, and the agent told her at that time that she "would get funeral expenses anyway and maybe a little bit besides," and the court held:

"While the statement made and relied on by the claimant was in writing and pertained to the death and compensation, it does not contain the semblance of a demand or claim for compensation . . ." (p. 448.)

The court further states in the opinion in this case on pages 447 and 448:

"The question whether the statement so made is a compliance with the

statute is one of consequence. There had been a number of cases where demands were claimed that were in ambiguous and doubtful terms, and waivers of the demands were insisted on. In the amended act of 1927 the legislature apparently undertook to meet the situation by prescribing in definite terms some protection to the employer by stating that no proceeding for compensation could be maintained unless the claimant shall within ninety days deliver to the employer or his agent a claim for compensation, or within six months in case of death. The evident purpose of the legislature was that the employer might have opportunity to test the validity of the claim while the facts were fresh as to the accident and when he might learn whether there was a real liability on his part under the statute. It provided that the claim should be written, should be delivered to the employer or his agent, that it should be personally delivered or sent by registered mail, and that this should be done within the prescribed time of ninety days after the accident unless the claimant was under certain specified disabilities, and there is no claim that Arvilla Baxter was under any of these. In *Sayers v. Colgate-Palmolive-Peet Co.,* supra, it was held that stricter compliance with the statute had become essential, that the legislature had stripped away the confusing refinements of the old statute and that the court cannot now sanction a rule which would revive the confusion concerning this phase of compensation as to demand from which the legislature had extricated the bench and bar."

Counsel for claimant cite cases from other states where the written claims were made by attorneys for the claimant, and one case where it was made by a brother of the injured employee, but they were always for and on behalf of the injured workman, and with his knowledge or consent, but never for and on behalf of one trying to collect a claim for medical services rendered the injured employee.

It is said in *Norman v. Consolidated Cement Co.,* 127 Kan. 643, 274 Pac. 233, that—

"This summary of the compensation act shows that the functions of the commission to which is committed the carrying of the provisions of the act into effect, are those of an administrative body vested, it is true, with some powers that are quasi judicial." (p. 647.)

If it is the legislative intention that the compensation commission is duly authorized to make such written claims, it would be most embarrassing indeed, and in fact disqualifying in the exercise of its quasi-judicial powers, when it would be confronted at the very beginning of the hearing with the question of the legality of the written claim made by the commission itself. We think such was not the intention of the legislature. Most surely the statute requires that the written claim be made by the claimant himself, or at least by some one for him and in his behalf and with his knowledge and consent. Besides, the validity of the written claim does not wholly

depend upon what the respondent understood it to mean. We have no finding here as to how it was understood except the findings are that shortly thereafter the insurance carrier commenced paying compensation, including the medical bills. We conclude that the first written claim for compensation was not within the requirements of the statute.

As to the second written claim which was made by the claimant and filed with the compensation commissioner on December 31, 1931, and a copy of it sent to the respondent on January 7, 1932, the attorneys for claimant urge that it is within the ninety-day rule because it was less than ninety days from the time claimant received a carbon copy of a letter written by the receiver of the insurance carrier of the subcontractor to the effect that the company would not be able to pay further claims. The findings show that the insurance carrier of the subcontractor. did pay claimant a compensation until September 3, 1931, which covered the week of September 3d to 10th, 1931. We have no quarrel with the theory or reasoning of counsel for claimant about the propriety of making the written claim within ninety days after receiving information that further payments could not be made, but that differs materially from the statutory requirement that "a written claim for compensation shall be served upon the employer . . . in cases where compensation payments have been suspended within ninety (90) days after the date of the last payment of compensation." Unless under the findings this written claim was made within ninety days after September 10, 1931, the date of the last payment, it cannot be a valid written claim, and the proceedings for compensation are thereby necessarily barred. As stated above, this second claim only needs to be considered because we concluded, as the trial court did, that the first written claim was not such as was required by statute.

The judgment is affirmed.