No. 40,544

GEORGE OTTO FITZWATER, *Appellant,* v. BOEING AIRPLANE COMPANY and LIBERTY MUTUAL INSURANCE COMPANY, *Appellees.*

(309 P. 2d 681)

Opinion filed April 6, 1957.

*Gerald L. Michaud,* of Wichita, argued the cause; *Ora D. McClellan, Harry E. Robbins, Jr., Carol V. Creitz* and *John B. Wooley,* all of Wichita, were with him on the briefs for appellant.

*Robert N. Partridge,* of Wichita, argued the cause; *George B. Powers, Samuel E. Bartlett, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert M. Siefkin* and *Richard C. Harris,* all of Wichita, were with him on the briefs for appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This was a Workmen's Compensation case. The trial court affirmed the award of the Workmen's Compensation Commissioner denying compensation, and the employee has appealed.

The legal question presented is whether the claim for compensation was made in time under our statute (G. S. 1949, 44-520a), which so far as here pertinent reads:

"No proceedings for compensation shall be maintainable hereunder unless a written claim for compensation shall be served upon the employer by delivering such written claim to him or his duly authorized agent, or by delivering such written claim to him by registered mail within one hundred twenty days after the accident, or in cases where compensation payments have been suspended within one hundred twenty days after the date of the last payment of compensation; . . ."

The facts disclosed by the record may be summarized as follows:

The appellant, George Otto Fitzwater, was a man sixty-eight years of age and working for the Boeing Airplane Company on Friday, November 20, 1953, in the Salvage Department. His duties consisted of hauling trash from the plant to the incinerator by the use of a tractor that was employed to pull trash-filled carts. His work would require him to pull the carts by hand on occasion in the process of hitching them to the tractor. The trash carts were mounted on hard rubber wheels and were approximately four feet wide and six feet long. Oftentimes the carts were hard to push or

tow by hand because the wheels would lock. About two or three months prior to December, 1953, the claimant commenced having pains and cramps in his chest. On the evening of the 20th day of November, 1953, the claimant, while pulling three of the carts by hand that rolled heavily, noticed a cramping across his chest that caused him to lose the strength in his arms and necessitated his leaning against the tractor and resting for a period of five to ten minutes. The cramping pains occurred between 12:00 and 1:00 o'clock a. m. There were no witnesses. Since it was about the end of his shift, he finished his shift and left work at about 1:30 o'clock a. m.

On Saturday, November 21, 1953, appellant contacted Dr. Dobson, his family physician, of Haysville, Kansas, and arranged for an appointment for the following Monday. Dr. Dobson, after examining Mr. Fitzwater, told him that he had heart trouble, and arranged to have him in the Osteopathic Hospital at Wichita, Kansas, for three days. After leaving the hospital, appellant went to his home and rested for approximately ten days. During this two-week period, while the appellant was absent from work, his wife called the Personnel Department at the Boeing Airplane Company and informed them that her husband was having heart trouble.

On December 7, 1953, the appellant reported back to work. He was required to go to First Aid, as do employees who miss work by reason of sickness. He was sent from the First Aid Department to Dr. Hay, an employee of the company, for examination. Dr. Hay sent the claimant home to get a letter from his doctor explaining the reason for his illness and releasing him to go to work. The appellant went back to Dr. Dobson and obtained the following letter:

"DR. H. FREDERIC DOBSON, Jr.
Physician—D. O.—Surgeon
Haysville Clinic
Haysville, Kansas
December 8, 1953

To Whom it may Concern:

This is to certify that Mr. George Otto Fitzwater, a patient in this office, has been found to be afflicted with coronary insufficiency.

Roentgenological studies indicate mild pulmonary congestion due to myocardial insufficiency. Electrocardiographic studies indicate coronary insufficiency and a possible old myocardial infarction.

The prognosis on this patient is fair, provided that his physical activity is so arranged as to eliminate any considerable effort.

Thanking you, we are
Very truly yours,
H. Frederic Dobson, Jr. [signed]"

On December 8, 1953, appellant returned to Dr. Hay with the letter and Dr. Hay then examined him, took a history of his accident and referred him to Dr. Moy, another company doctor, for the purpose of having an electrocardiographic study performed. Just what information the appellant gave to Dr. Hay on the 8th day of December, 1953, is conflicting in the evidence. He did inform Dr. Hay that his heart pain had begun approximately two or three months prior to his serious attack on November 20, 1953. The evidence is not clear as to whether Dr. Hay knew the attack which sent the appellant to the hospital occurred while he was working at the plant. The appellant himself admits on cross-examination that it was not until after he was discharged in April of 1955 that he informed anyone that the attack on November 20, 1953, occurred while he was at work, and it may have been the Union that he then told. The inference from the testimony of Dr. Hay is that the appellant intentionally concealed the facts of the accident in an effort to get back in the employ of the Boeing Airplane Company at light work. The trial court *found* on this point that the *appellees had no notice or knowledge* that appellant's accident occurred on the job.

As a result of the examination given to the appellant by Dr. Hay and Dr. Moy, it was determined that the appellant could no longer do the type of work which he had been doing at the plant. Pursuant thereto, Dr. James T. Moy prepared the following interoffice memorandum which was sent to the Personnel Department:

"BOEING AIRPLANE COMPANY
WICHITA DIVISION
INTEROFFICE MEMORANDUM

FROM MEDICAL 580                                    12-11-1953
TO PERSONNEL 580
SUBJECT: FITZWATER, G. O. PEN:28497 DEPT:577

The subject employee has a heart disease, which in this instance is extremely serious. He should not, therefore, be allowed to continue with his present duties in that his physical activity should be strictly limited.

The above condition is progressive and the prognosis is guarded.

James T. Moy, M. D."

As a result of this memorandum the Personnel Department found appellant a job which consisted of wrapping and stamping parts. The appellant commenced this job on December 12, 1953, and continued doing this form of light work until the first part of April, 1955, when the company let him go. The wages paid to the appellant after the 12th day of December, 1953, were the regular wages for

the work he was doing and were the same as other employees doing similar work were receiving. The rate of pay was the same rate which he received prior to the time of his heart attack, his average weekly wage then being $67.40.

Neither of the Boeing doctors was of the opinion that they were treating Mr. Fitzwater for the year and a half period that he remained in Boeing's employ after December 7, 1953. There is nothing in the record to indicate that the Boeing doctors saw the appellant after December 8, 1953. On December 9, 1953, the Medical Department of Boeing placed appellant on a "G" card restricting his activities. This means that the authority in supervision is not supposed to transfer the employee from that job before consulting with the Medical Department. The appellant himself testified that his own physician, Dr. Dobson, was seeing and treating him throughout this period of time from November 20, 1953, to April, 1955, and he was personally billed by Dr. Dobson for his services. No opinion was advanced by Dr. Dobson or the appellant that Boeing was working with Dr. Dobson in the treatment of the appellant. The trial court *found* that the respondent and insurance carrier *furnished no treatment* for the injury sustained by this man arising out of and in the course of his employment.

The Examiner found among other things (1) That the claimant suffered an accident arising out of and in the course of his employment on the 20th day of November, 1953, at Boeing Airplane Company, which, as of the date of his termination of employment, approximately April, 1955, resulted in permanent partial disability of 50%; (2) That neither the claimant's letter from Dr. Dobson nor the Boeing interoffice memorandum constituted a written claim for compensation; first, because neither document was signed by the claimant, and second, because Dr. Dobson's letter although written by claimant's own doctor, was concerned only with the man's physical condition and can in no possible way be construed to be a claim for compensation or intended to be a claim for compensation on the part of the claimant; (3) That no medical treatment was furnished by the respondent within the meaning of the act at any time after December 8, 1953, at which time claimant returned to work; that allowing the claimant to return to work at light work was not medical treatment within the meaning of the statute, since there was no indication that that type of work was meant to be treatment for his heart condition, but merely the limitations of his physical capacity.

The Examiner found that since no compensation was paid and no medical treatment furnished by the respondent within one hundred twenty days prior to the date claimant's claim for compensation was filed with the Commissioner, May 18, 1955, it was not filed in the statutory period and claimant's claim for compensation must be denied. An award of compensation was denied and the findings and the award of the Examiner were approved by the Workmen's Compensation Commissioner.

Upon appeal to the district court of Sedgwick county, the trial court on the 20th day of June, 1956, announced in its Journal Entry of Judgment:

". . . the decision and award of the Workmen's Compensation Commission made and entered on May 28, 1956, should be affirmed and made the decision and award of this court. In addition the court made further comments and findings which are contained in the record of the proceedings, which are by reference made a part hereof."

The trial court thereupon denied an award of compensation and the claimant appealed.

The questions presented to this court for review are: First, did appellant serve appellees with a written claim within one hundred twenty days after his injury as required by the Kansas Workmen's Compensation Act? Second, if the letter of Dr. Dobson dated December 8, 1953, and the interoffice memorandum of the Boeing Airplane Company dated December 11, 1953, heretofore set out, do not satisfy the requirements of a written claim, did appellees extend the time within which a written claim must be made by furnishing appellant with medical treatment and the payment of compensation?

Just what findings the trial court made in connection with its decision in this case must be analyzed. The remarks of the trial judge are quite extensive. The maximum credence placed upon appellant's theory by the court below is typified by these remarks:

"I think it is immaterial whether we call it treatment or not. I would say he was being given general advice because he had heart trouble. It is going a long way to call it treatment. It is advice. . . ."

At another point the trial judge said:

". . . If I were making an interpretation as a matter of law I would draw the line and say treatment in the statute means treatment for the injury received on the job and not treatment for a general heart condition which he had before he received cramps on the job; that is what that means. . . ."

At still another point the court made this remark:

"We conclude they weren't giving him treatment. That is the end of the case."

In substance, these remarks incorporated in the journal entry by reference had the effect of affirming the decision and award made by the Workmen's Compensation Commission *in toto* and on the same findings made by the Commissioner. The same situation arose in the case of *Moore v. Dolese Brothers Co.*, 171 Kan. 575, 236 P. 2d 55, where the court at page 579 in commenting upon an attempted construction by the appellant said:

". . . We regard this too narrow a construction of the language used and point out that the court in its *findings* and judgment '*affirmed and concurred in*' the award of the compensation commissioner." (Emphasis added.)

We shall now turn to the first question—whether the two documents in question represented written claims filed within the statutory period. It is well established that a written claim for compensation prescribed by G. S. 1949, 44-520a, need not take on any particular form so long as it is in fact a claim. (*Bull v. Patti Const. Co.*, 152 Kan. 618, 106 P. 2d 690; *Weaver v. Shanklin Walnut Co.*, 131 Kan. 771, 293 Pac. 950; *Eckl v. Sinclair Refining Co.*, 133 Kan. 285, 299 Pac. 588; and *Klein v. McCullough*, 135 Kan. 593, 11 P. 2d 983.)

Whether an instrument in writing propounded as a written claim in a workmen's compensation case actually constitutes a claim is governed by the intention of the parties. In other words, the court will look to the parties to determine what was in their minds in preparing and receiving the document. (*Richardson v. National Refining Co.*, 136 Kan. 724, 18 P. 2d 131.) This principle has been followed universally by this court in subsequent decisions. In *Baxter v. Chicago, R. I. & P. Rly. Co.*, 139 Kan. 443, 32 P. 2d 451, a majority of the court held that a signed statement did not constitute a written claim for compensation because there was no intention therein to make claim. In *Eckl v. Sinclair Refining Co.*, supra, the court held that two letters received by the employer constituted claims for compensation because it was clearly shown that the claimant had in mind the collection of compensation in writing the letters. In *Smith v. Sonken-Galamba*, 149 Kan. 693, 88 P. 2d 1114, this court held that a release signed by the claimant did not constitute a written claim for compensation because the claimant did not have in mind making a claim for compensation when he signed the instrument.

In a preliminary way it is well to reiterate and observe some of the basic rules to which we adhere in workmen's compensation cases upon review in this court:

(A.) The jurisdiction of the Supreme Court on appeal taken from the judgment of the district court is specifically limited to the determination of questions of law. (G. S. 1955 Supp., 44-556; and *Barr v. Builders, Inc.,* 179 Kan. 617, 296 P. 2d 1106.)

(B.) Whether an instrument propounded as a written claim (*Klein v. McCullough,* supra; and *Bull v. Patti Const. Co.,* supra) or whether a claim for compensation has been filed in time is primarily a question of fact. (*Moore v. Dolese Brothers Co.,* supra; *Kober v. Beech Aircraft Corporation,* 177 Kan. 53, 276 P. 2d 335; and *Johnson v. Skelly Oil Co.,* 180 Kan. 275, 303 P. 2d 172.)

(C.) As to questions of fact this court reviews the record only to determine whether it contains substantial evidence to support the trial court's finding, and in doing so all the evidence is reviewed in the light most favorable to the prevailing party below. If substantial evidence appears, such finding is conclusive and will not be disturbed on review. (*Silvers v. Wakefield,* 176 Kan. 259, 260, 270 P. 2d 259; and *Barr v. Builders, Inc.,* supra.)

(D.) Only in the event the evidence is undisputed, is the question one of law for appellate review. (*Kober v. Beech Aircraft Corporation,* supra.)

The limited situations related in (B) above are indicated only because they have special application to the instant case at bar and are not intended to be exclusive. This concept prevails throughout the workmen's compensation law. Whether an accident arose out of and in the course of a workman's employment (*Silvers v. Wakefield,* supra), the extent of temporary total disability (*Bull v. Patti Const. Co.,* supra), whether the injury was the cause of death (*Baxter v. Chicago, R. I. & P. Rly. Co.,* supra) and many other determinations are all primarily questions of fact.

A reading of the cases leads to confusion as to whether on appellate review an instrument propounded as a claim is primarily considered a question of fact or one of law. The *Klein* case and the *Bull* case cited in (B) above confirm the proposition that the determination is primarily a fact question. Many of the opinions in other cases, without making comment on the question, plunge directly into the review treating it as a question of law. Presum-

ably the evidence in the lower court was undisputed where the review was treated basically as a question of law. (See, *Weaver v. Shanklin Walnut Co.*, supra; *Eckl v. Sinclair Refining Co.*, supra; *Sayers v. Colgate-Palmolive-Peet Co.*, 134. Kan. 872, 8 P. 2d 383; *Richardson v. National Refining Co.*, supra; *Baxter v. Chicago, R. I. & P. Rly Co.*, supra; and *Smith v. Sonken-Galamba*, supra.)

To determine whether a written instrument propounded as a claim for compensation is in fact a claim is considered under special rules applicable to workmen's compensation cases. The intention and meaning is not garnered from the four corners of the written document alone as is the rule where there is an unambiguous written contract or a will.

In determining whether or not a written instrument is in fact a claim the court will examine the writing itself and all the surrounding facts and circumstances, and after considering all these things, place a reasonable interpretation upon them to determine what the parties had in mind. The question is, did the employee have in mind compensation for his injury when the instrument was signed by him or on his behalf, and did he intend by it to ask his employer to pay compensation? (*Richardson v. National Refining Co.*, supra; and *Smith v. Sonken-Galamba*, supra.)

In the instant case it must be emphasized that *no objection was made* by the parties concerning the finding that appellant suffered an accident arising out of and in the course of his employment on the 20th day of November, 1953, at the Boeing Airplane Company. A material fact at issue in the trial court was whether the Boeing doctors knew the appellant had a heart attack while he was working on the job and thereby charge the company with knowledge of the accident which arose out of and in the course of appellant's employment. This was material in construing the legal effect of the written instruments under consideration in accordance with the above rule. In our opinion it may not be said there was no dispute in the evidence in the instant case. (*Kober v. Beech Aircraft Corporation*, supra.) The trial court found that neither the letter of Dr. Dobson presented to the Boeing doctors by the appellant on December 8, 1953, nor the interoffice memorandum of the Boeing Airplane Company dated December 11, 1953, constituted a written claim for compensation within the meaning of the statute. Our function on this point is limited to a review of the record to determine whether it contains substantial evidence to support the trial court's finding.

The trial court found that the Boeing doctors did not know that the appellant suffered a heart attack on the job. This finding was specified in the remarks of the trial judge incorporated in the Journal Entry of Judgment dated June 20, 1956. This finding was supported by substantial evidence when viewed under the applicable rules.

The appellant when he first returned to work after his hospitalization on December 7, 1953, failed to present a release from his doctor thereby permitting him to return to work under the rules of the Boeing Airplane Company. The company doctor sent him home to get a release from his doctor to explain his illness. The letter of Dr. Dobson explained the reason for appellant's absence from work and advised the Boeing doctors of the limitations of appellant's physical capacity. Under all the facts and circumstances heretofore disclosed, the finding is justified that this letter was understood and intended as a release signed by the appellant's family doctor entitling him to return to work under the conditions specified, and that it was not intended or considered by either of the parties as a claim for compensation. Furthermore, on the evidence presented by the record the appellant had no knowledge whatever of the interoffice memorandum from the Medical Department to the Personnel Department in the Boeing Airplane Company, thereby precluding it from being a valid claim. (*Flanagan v. Lux*, 141 Kan. 88, 40 P. 2d 458.)

We have no difficulty in concluding that the record presents substantial evidence to support the findings of the trial court and it did not err in finding that no written claim had been presented within one hundred twenty days after appellant's injury, as required by the Workmen's Compensation Act.

We next turn to the question whether or not the appellees extended the time within which a written claim for compensation must be made by furnishing appellant with medical treatment and the payment of compensation.

On this point the appellant urges that the time for filing the claim was extended by the payment of compensation to the claimant by furnishing him with bench-type work necessitating minimal physical requirement, and continuing to pay him at the same rate of pay he had been receiving for his previous work. In addition to that he claims the statutory time within which to make a written claim was extended by the furnishing of medical treatment. This whole theory is based on the proposition that the trial court found

the Boeing Airplane Company was treating the appellant by giving him light work.

We have already noted the finding of the trial court that the assignment of light work to the appellant was not treatment, and that the Boeing Airplane Company had no knowledge that an accident arose out of and in the course of appellant's employment. These were among the material facts and circumstances projected to ascertain the intention of the parties under the first question discussed.

The proposition of law upon which appellant relies is another familiar rule in workmen's compensation cases. That is, where an employer furnishes medical aid to an injured employee it constitutes payment of compensation within the meaning of G. S. 1955 Supp., 44-510. (*Owen v. Ready Made Buildings, Inc.*, 180 Kan. 286, 303 P. 2d 168; and the cases therein cited.)

Appellant's argument fails on this point since the premise upon which it is based is unsound; namely, that the company furnished medical treatment for the appellant within the meaning of the statute. The familiar rules heretofore set out from (A) to (D) are equally applicable here and need not be repeated. This case was presented to the trial court upon controverted facts; therefore, we are limited in the review of this record to determine only whether substantial evidence is disclosed to support the findings of the trial court. An examination of the record discloses ample evidence to support the findings.

Cases relied upon by the appellant, wherein he contends the prescription of light work was held to constitute treatment for injury on the job, merit discussion.

In the case at bar, we must emphasize, by reason of the findings of the trial court based upon substantial evidence, that the employer paid appellant for the actual work he was doing at the regular wage for his new job classification. In other words, even though his wages before and after injury were the same, he earned every cent he was paid. Second, the employer advised light work consistent with appellant's physical limitations by reason of a general heart condition.

Appellant's contentions and most of the cases upon which he relies were met and discussed in *Moore v. Dolese Brothers Co.*, supra. There an employee was treated by a company doctor for a back injury received on the job. The company knew of the injury and

paid for medical attention the sum of $835.15 which included employee's last call to the doctor on September 15, 1950, when he was advised to engage in light work only. The company had given the employee light work on the doctor's advice in March, 1950, and it continued to September 15, 1950, which was within one hundred twenty days of the time written claim for compensation was filed. A divided court affirmed the findings of the trial court that claim was filed in time. This is by far the strongest case presented by the appellant and we emphasize that the last call to the company doctor for which the company responded in payment for treatment was within the one hundred twenty day requirement. The employer's doctor prescribed treatment for his patient by prescribing light work in addition to other items. There this court was asked:

" 'Does the fact that the doctor prescribed light work as treatment for claimant upon and following his return to work for respondent, for the reason that such light work might make claimant's condition better, toll the running of the statutory period within which a claimant must make a written claim for compensation?'

"Answering categorically the question propounded, we feel compelled to say that such a prescription, for the purpose stated, would or would not toll the time of making a claim for compensation depending upon the time and circumstances of the giving of the prescription considered in connection with the pertinent sections of our statutes. . . ." (p. 578.)

The reasoning of the court in the *Moore* case is given as follows:

"Appellant's specific complaint is, the trial court did not find that on September 15, 1950, the respondent furnished treatment for the claimant, and points out that what the court found was that Doctor Anderson prescribed light work as a treatment for claimant 'upon and following his return to work,' which would mean upon March 6, 1950, and subsequently, and that the prescription 'was in effect up to and including September 15, 1950.' We regard this too narrow a construction of the language used and point out that the court in its findings and judgment 'affirmed and concurred in' the award of the compensation commissioner.

"If the findings and judgment of the trial court should be construed to mean that when the claimant was released for work in March, 1950, among the prescriptions given was that he should perform only light work, and that the claimant had followed that prescription to a time within 120 days prior to his filing a claim for compensation, even though medical services had not been furnished by the employer within such time, our authorities cited by appellee (*Rupp v. Jacobs*, 149 Kan. 712, 88 P. 2d 1102, and *Bishop v. Dolese Brothers Co.*, 155 Kan. 288, 124 P. 2d 446) would not sustain the judgment of the trial court. Neither have we been able to find other authorities that would do so. In the Rupp case, where a doctor had prescribed light work,

the employer agreed to give the claimant light work and paid him his regular wages, although it was known to both of them that the wages paid were in excess of what claimant earned. This court held that the excess was in fact a payment of compensation. The syllabus reads:

" 'Notice and demand for compensation is timely if given within ninety days [now one hundred and twenty] after employer suspends voluntary and informal payments of compensation.'

"There is no claim that such a situation existed in this case. In the Bishop case the claimant testified that he visited the doctor and was treated by him about every two weeks from May 7, 1939, to February 22, 1940. The claim for compensation was filed on March 4, 1940. The compensation commissioner apparently believed claimant's testimony and awarded compensation. This court affirmed." (pp. 579, 580.)

The appellant places great reliance upon this court's holding in *Johnson v. Skelly Oil Co.,* supra. That decision bears little similarity to the instant case for there the employer knew of the injury and the company doctor was treating it. The company there induced the employee to accept payments through an insurance plan and sought to avoid liability under the Workmen's Compensation Act on the ground that no compensation had been paid to the employee within one hundred twenty days prior to filing the written claim.

In no case before this court has a doctor's prescription of light work as treatment for an employee, upon his return to work for his employer, *standing alone* been held to toll the running of the statutory period within which a claimant must make a written claim for compensation.

Of further importance is the fact that all our cases, except one, on the question whether a written claim was filed in time under the statute, hold that it is primarily a question of fact, and the only matter before this court for review is whether the record discloses substantial evidence to support the findings of the trial court as a matter of law. Irreconcilable is *Rupp v. Jacobs,* 149 Kan. 712, 88 P. 2d 1102, where this court reversed the trial court substituting its findings for those of the trial court, two of the justices dissenting. In so far as inconsistent with what is here said and held *Rupp v. Jacobs,* supra, is disapproved.

This cannot be overemphasized in workmen's compensation cases. Justice Dawson in *Klein v. McCullough,* supra, in 1932 speaking of this rule in workmen's compensation cases aptly said:

". . . But whether there is such evidence is a question of law which this court's duty will not permit it to evade, no matter how much we may

regret to have our dockets cluttered with this class of cases—a class which the reformers of two decades ago confidently hoped would be fairly and competently handled by a statutory board and that the courts would eventually be relieved of them altogether." (p. 595.)

The legislature has made mandatory written claim for compensation. The situation existing before the claim legislation was enacted and the reason for the legislation is best described by Justice Dawson, speaking for the court, in *Klein v. McCullough,* supra:

". . . This court is grateful to the legislature for the enactment of section 20 of the present statute, which emancipated the bench and bar and the compensation commission as well, from the mess we were in touching the requirements of notice and demand and how they might be waived where no prejudice was shown—not to speak of our more or less constant distrust that such waivers were largely established by interested and questionable testimony. This court is not disposed to open another such Pandora's box of trouble by conceding that the plain letter of the statute can be circumvented by oral testimony to show a waiver of its requirement. . . ." (p. 597.)

Having reviewed all of the evidence presented by the record in this case and considered all of the facts and circumstances in the light most favorable to the prevailing party, we conclude there was substantial evidence to support the findings and judgment.

The judgment is affirmed.